CHARLES HOLMES, Appellant, v. BESSIE L. GILMAN, Impleaded, etc., Respondent.

A partner occupies a fiduciary position with regard to his copartners and the funds of the firm, and may not make a personal profit out of the use of such funds.

This relationship authorizes the same remedy on behalf of a partner who has been wronged by the appropriation by a copartner to his own use of the funds of the firm, as would exist against a trustee in behalf of a *cestui que trust*.

The wronged partner has the right, therefore, to follow the funds and, provided they can be clearly ascertained, traced and identified, and the rights of *bona fide* purchasers for value do not intervene, to recover property into which such funds have been changed, together with the increased value thereof.

*It seems* that when a trustee misapplies the trust fund, using it with moneys of his own in the purchase of property, while the whole property may not be claimed by the *cestui que trust*, his right is not limited to the amount misappropriated, but he is entitled at his option, to an interest in the property, including any increased value; he and his trustee being considered co-owners in the proportion that their contributions bore to the sum total invested.

The right of a wife to insure the life of her husband is not property, and when he uses trust funds in his hands to procure therewith insurance for her benefit, paying the premiums entirely out of the fund, it may not be said that he has mingled such fund with other property, and that the policy is the product of both; but the *cestui que. trust* is entitled to the benefit of the whole policy.

Where, therefore, a member of a firm misappropriated its funds, using a portion thereof to procure insurance on his life in the name and for the benefit of his wife, and paid the premiums of the policies wholly out of such funds until his death, *held*, that the surviving member of the firm was entitled to the whole amount of the insurance; it appearing that such amount was less than the amount of firm funds misappropriated by the deceased partner.

As to what would have been the respective rights of the wife and the surviving partner, in equity, in case the proceeds of the policies exceeded the whole amount of firm funds misappropriated by the decedent, *quære*.

*Central Bank* v. *Hume* (128 U. S. 195), distinguished.

*Holmes* v. *Gilman* (64 Hun, 227), reversed.

(Argued April 25, 1893; decided June 6, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order

made May 13, 1892, which reversed a judgment in favor of plaintiff entered upon the report of a referee and granted a new trial.

This is an appeal by the plaintiff from an order of the General Term of the Supreme Court of the first department, which reversed upon the facts as well as the law so much of a judgment entered upon the report of a referee as was in favor of the plaintiff, and granted a new trial of the issues involved before another referee.

The action was brought for the purpose of having an account taken of all of certain moneys alleged to have been wrongfully abstracted from a partnership by one Arthur C. Gilman, who was one of the partners, and invested by him in certain policies of insurance in favor of his wife and children. The complaint asked also that the amount of the insurance money collected on such policies might be impressed with a trust in favor of the plaintiff, who was one of the partners in such firm and the assignee of the other members excepting Gilman, and that the defendant, the Union Trust Company (with which the moneys collected on the insurance policies had been deposited), might be directed to pay such moneys over to the plaintiff. Other relief · was asked which was appropriate to the case stated in the complaint. The answer denied the chief allegations contained in such complaint, and upon the issues thus raised the parties proceeded to trial before a referee. The following are the material facts : In December, 1880, Arthur C. Gilman became a member of the firm of J. H. Labaree & Co., dealers in teas and coffees in New York city, and continued such member until his death, which occurred, suddenly, on the 15th of December, 1890. During all this time he was a trusted member of the firm and practically had exclusive charge of its office affairs, which included the management of the firm bank account and the making of all notes and other paper issued in the business of the firm. For several years prior to his death he had prepared semi-annual statements purporting to show the financial condition of the firm and these statements he had rendered to its differ-

ent members.　The last one had been rendered as of the date Dec. 1, 1890, and showed the firm with assets exceeding liabilities by nearly the amount of $200,000.　This statement was received by the plaintiff (who resided in Cincinnati) about Dec. 11, 1890.　For some reason, which is not made plain by the proof, and soon after the above date the members of the firm commenced an examination as to its condition, and the examination was not concluded until after Gilman's death, when it was discovered that the firm was insolvent by more than $36,000.

Further investigation brought to light the fact that Gilman, commencing in the year 1882 and continuing down to his death, had wrongfully and fraudulently taken from the assets of the firm large sums of money, which he had wrongfully appropriated to his own use.　By reason of this dishonest conduct on the part of Gilman the firm was, in December, 1890, insolvent instead of having a surplus of nearly $200,000, as shown by his last statement.　The amount wrongfully taken by him was over $220,000, and it was done by means of false entries in the books of the firm spread over the period of about eight years.

There were found among his papers in the safe at the office of the firm four policies of insurance upon his life, one for $5,000, issued and dated March 9, 1880, and three other policies, aggregating $45,000, and issued between the dates of April, 1884, and January, 1888.　Also two certificates of his membership in a benefit association, one dated in August, 1881, and the other in January, 1885.　Each of the four policies was issued on Gilman's application made in the name of his wife, and each was in terms payable to her.　The certificates were also issued on his application signed by him, in which he stated he desired his death loss to be paid to his wife. It does not appear that any of the premiums upon any of the policies were paid by Mrs. Gilman, or with funds provided by her, or that she had any knowledge of the existence of the policies prior to her husband's death.　All of the premiums on the above-mentioned policies, aggregating about $4,000,

were paid by Gilman out of the firm funds, and the premiums which fell due after the year 1882 on the above-mentioned $5,000 policy were also paid from such funds.

When the firm was discovered to be insolvent the plaintiff provided funds for the payment of its debts and the continuance of its business.

The policies of insurance having been collected and paid into the trust company, the plaintiff and the defendant, Mrs. Gilman, each claimed the right to recover the whole sum, amounting to over $56,000. The referee awarded the above-mentioned $5,000 policy, which was dated and issued in March, 1880, to the defendant, subject to the lien of about $1,000 of premiums becoming due subsequent to 1882, and paid by Gilman out of the funds of the firm. The policy itself was taken out prior to any conversion of firm funds, and the premiums thereon prior to 1882 were paid by Gilman out of his own funds. The policies aggregating $45,000 were obtained and maintained, as the referee finds, from the funds of the firm, which the evidence traces and identifies as thus invested. The referee, therefore, awarded all the moneys collected on those three policies to the plaintiff. He awarded to the defendant, Mrs. Gilman, the amounts of the two certificates of insurance in the benefit associations, on the ground that the plaintiff had failed to show that they had been either procured or maintained from the funds of the firm. The defendant, Mrs. Gilman, appealed from the judgment entered upon the report of the referee to the General Term, where the judgment was reversed and a new trial granted as to the amount awarded to the plaintiff. For the purpose of facilitating an appeal by the plaintiff to this court, the defendant, Mrs. Gilman, has stipulated that if the order granting a new trial be here affirmed, the judgment to be entered in her favor shall nevertheless award to the plaintiff the amount of the aggregate premiums found by the referee to have been paid out of the firm money, together with interest thereon from the time of their payment, and that the rest of the proceeds of the policies shall be paid to her.

*George Hoadly* for appellant.   The relation of partners to
each other in the control and disposition of the firm property
is fiduciary, constituting each a trustee for all.   (Lindley on
Part. 303 ;  *Featherstonhaugh* v. *Fenwick,*  17  Ves.  311 ;
*Anderson* v. *Lemon,* 8  N. Y.  236 ;  *Mitchell*  v.  *Read,* 61 id.
123 ;   *Gardner*  v.  *McCutcheon,*  4  Beav.  534 ;   *Dean*  v.
*McDowell,* L. R. [8 Ch. Div.] 345 ;  *Riddle* v. *Whitehill,* 135
U. S. 621 ;  *Brooks* v. *Martin,* 2 Wall. 70.)   If a partner use
partnership property for his private purposes, he, and all per-
sons claiming under him, except *bona fide* purchasers for
value without notice, must account for it and its increase to
the firm.    (Perry on Trusts, § 127 ;  *Shaler* v. *Trowbridge,* 28
N. J. Eq. 595 ;  *Aldridge* v. *Muirhead,* 101 U. S. 398 ; *New-
ton* v. *Porter,* 69  N. Y. 133 ;  *Hughes* v. *U. P. Lines,* 119
id. 423 ;  *Cook* v. *Tullis,* 18 Wall. 332 ;  *Riggs* v. *Palmer,* 115
N. Y. 506.)   Mrs. Bessie L. Gilman is a volunteer who fur-
nished no consideration whatever for the policies of insurance.
(*Olmsted*  v. *Keyes,* 85  N. Y.  593 ;  *N. Y. L. Ins. Co.* v.
*Statham,* 93 U. S. 24 ;  *Ruse* v. *M. B. Co.,* 23  N. Y. 516 ;
*Loomis* v. *E. L. Ins. Co.,* 6 Gray, 396 ;  *C. M. L. Ins. Co.* v.
*Schaeffer,* 94  U. S. 457 ;  *Warnock* v. *Davis,* 104 id. 775 ;
*Beach* v. *B. S. Co.,* 30 Barb. 436 ;  *Walsh* v. *M. L. Ins. Co.,*
133 N. Y. 416.)   The defendant, Mrs. Bessie L. Gilman, can
only obtain the benefit of the policies by making herself a par-
ticipant in the misappropriation of the money with which her
husband paid the premiums.   (*Whitehead* v. *N. Y. L. Ins.
Co.,* 102 N. Y. 143 ;  *Benedict* v. *Smith,* 10 Paige, 126, 130 ;
*F. L. & T. Co.* v. *Walworth,* 1 N. Y. 433, 447;  *Cook* v.
*Tullis,* 18 Wall. 340 ;  *Bennett* v. *Judson,* 21 N. Y. 238 ;
*Schneider* v. *U. S. L. Ins. Co.,* 123 id. 109 ;  *Krumm* v.
*Beach,* 96 id. 398.)   The defendant can take no benefit from
the payments made by Gilman for premiums which were
charged to him upon the firm books.   (*Pence* v. *Langdon,* 99
U. S. 578 ;  *Baker* v. *Lever,* 67 N. Y. 309 ;  *Clarke* v.
*Ramuz,* L. R. [2 Q. B.] 461–462 ;  *Riggs* v. *Palmer,* 115
N. Y. 511 ;  *N. Y. L. Ins. Co.* v. *Statham,* 93 U. S. 24.)   The
defendant can take no benefit from the cash payments made

by Gilman to the firm, nor from the cash deposits made by him in his private bank accounts. (*N. Y. & B. F. Co.* v. *Moore*, 18 Abb. [N. C.] 106.) The referee's order as to costs and disbursements was not erroneous. (*Van Riper* v. *Poppenhausen*, 43 N. Y. 68; *Taylor* v. *Root*, 48 id. 687; *Herrington* v. *Robertson*, 71 id. 280, 284; *Church* v. *Kidd*, 3 Hun, 254, 271; *Van Gelder* v. *Van Gelder*, 84 N. Y. 658.) An appellate court will not review the exercise of such discretion, except where it has been palpably abused. (*Barker* v. *White*, 1 Abb. Ct. App. Dec. 95; *Phelps* v. *Wood*, 45 How. Pr. 1.)

*James G. Janeway* for respondent. The policies in suit were contracts with the wife; therefore, and by the statute, they were her property, free from any claims against her husband. (*Whitehead* v. *N. Y. L. Ins. Co.*, 102 N. Y. 143; *Eadie* v. *Slimmon*, 26 id. 9; *Baron* v. *Brummer*, 100 id. 372; *Brick* v. *Campbell*, 122 id. 337; *Olmsted* v. *Keyes*, 85 id. 593; *Frank* v. *M. L. Ins. Co.*, 102 id. 266; *Romaine* v. *Chauncey*, 129 id. 566.) Assuming the appellant's theory to be the true one, that in equity he may follow the partnership funds applied by Gilman in payment of the premiums on the policies and impress the proceeds with a trust in his favor, he could not under any principle of equity obtain a lien for more than the gross amount of the moneys so applied, with interest. (*Knatchbull* v. *Hallett*, L. R. [13 Ch. Div.] 696; *Nat. Bank* v. *L. Ins. Co.*, 104 U. S. 54; Perry on Trusts, §§ 837, 842; *Lewis* v. *Madocks*, 17 Ves. 48; *Price* v. *Blakemore*, 6 Beav. 507; *Lane* v. *Dighton*, Amb. 409; *Scales* v. *Baker*, 28 Beav. 91; *Brown* v. *Adams*, 21 L. T. [N. S.] 71; *Cook* v. *Addison*, L. R. [7 Eq.] 466; *Cavin* v. *Gleason*, 105 N. Y. 256; *Ferris* v. *Van Vechten*, 73 id. 113.) A wife has an insurable interest in the life of her husband, which is in the nature of a property right. The proceeds of policies upon his life do not spring solely from premiums paid, but result in part from the insurable interest belonging to the wife. Assuming that the premiums on the policies in this case were paid with the

plaintiff's money, the proceeds of such policies were not wholly the result of such premiums, but arise in part from the insurable interest or property right belonging to Mrs. Gilman, involved with the premiums. Therefore, the plaintiff cannot claim the whole proceeds, but at most a lien thereon for the amount of premiums paid with his money and interest. (*Bank of Washington* v. *Hume*, 128 U. S. 195 ; *McCutcheon's Appeal*, 99 Penn. St. 137 ; *Elliott's Appeal*, 14 Wr. 75 ; *Æ. N. Bank* v. *Ins. Co.*, 24 Fed. Rep. 770 ; *Pence* v. *Makepeace*, 65 Ind. 345 ; *Steigler* v. *Steigler*, 77 Va. 163 ; *Whitehead* v. *N. Y. L. Ins. Co.*, 102 N. Y. 143 ; *Carpenter* v. *Carpenter*, 25 N. J. Eq. 197.) Respondent's insurable interest or right to insure — a right in the nature of property — has been involved or blended with the premiums, and the proceeds are the product of the two and not of the premiums alone. (*Whitehead* v. *N. Y. L. Ins. Co.*, 102 N. Y. 143 ; *Curtis* v. *Leavitt*, 15 id. 9 ; *People* v. *U. Ins. Co.*, 15 Johns. 387 ; *Aken* v. *N. R. R. Co.*, 30 Barb. 305.) Gilman being a partner in the firm, and being rightfully entitled as such to draw and use for his own benefit a part of the partnership funds, there was no appropriation by him of funds which can be followed in equity. (Penal Code, §§ 528, 541 ; *State* v. *Butman*, 61 N. H. 511 ; *Mabbett* v. *White*, 12 N. Y. 442–445 ; *Welles* v. *March*, 30 id. 344 ; *Graser* v. *Stellwagen*, 25 id. 315 ; *Holmes* v. *Gilman*, 64 Hun, 227.) The rule followed by the referee in the decision of the case is not applicable, for the further reason that the funds appropriated by Gilman were taken in the form of money, and as such used in a transaction in the ordinary course of business upon a consideration valid as between himself and his wife. (*Stephens* v. *Board of Education*, 79 N. Y. 183–187 ; *Warren* v. *Haight*, 65 id. 171–178 ; *Southwick* v. *F. N. Bank*, 84 id. 420, 435 ; *Gammon* v. *Butler*, 48 Maine, 344 ; *Mason* v. *Waite*, 17 Mass. 560 ; *Whitehead* v. *N. Y. L. Ins. Co.*, 102 N. Y. 133 ; *Brummer* v. *Cohn*, 86 id. 11 ; *Romaine* v. *Chauncey*, 129 id. 566.) The evidence was insufficient to warrant the referee in finding that Arthur C. Gilman wrongfully appropriated the sum of

$222,934.53, the property of his copartners.) *Henry* v. *Henry*, 8 Barb. 588; *N. Y. & B. F. Co.* v. *Moore*, 18 Abb. [N. C.] 113.)

PECKHAM, J. It is stated in the order which reverses the judgment herein, that it is reversed upon questions of fact as well as of law. In such case it is the duty of this court to review the determination of the court below upon both questions of fact and of law. (Code of C. P. § 1338.) A careful review of the case convinces us that the findings of fact made by the referee are amply sustained by the evidence and that the judgment should not be reversed on the facts. We are confirmed in the correctness of this view upon a perusal of the opinions delivered by the learned judges at the General Term. We there find that the order reversing the judgment upon questions of fact as well as of law was formal merely, the judgment being actually reversed because the court below took a different view of the law from that adopted by the referee upon his own findings of fact.

The claim of the plaintiff to recover the moneys arising from the payments of these policies is based upon the principle which allows a *cestui que trust* to follow trust funds and to appropriate to himself the property into which such funds have been changed, together with the increased value of such property, provided the trust fund can be clearly ascertained, traced and identified, and provided the rights of *bona fide* purchasers for value, without notice, do not intervene.

The right has its basis in the right of property, and the court proceeds on the principle that the title has not been affected by the change made of the trust funds, and the *cestui que trust* has his option to claim the property and its increased value as representing his original fund. The right to follow and appropriate ceases only when the means of ascertainment fail. It is a question of title. (*Van Alen* v. *American National Bank*, 52 N. Y. 1; *Newton* v. *Porter*, 69 id. 133; *Ferris* v. *Van Vechten*, 73 id. 119; *Matter of Cavin* v. *Gleason*, 105 id. 256, 260; *In re Hallett's Estate*, L. R.

[13 Ch. Div.] 696.) It is somewhat akin to the principle
decided in *Silsbury* v. *McCoon* (3 N. Y. 379), where corn
was wrongfully taken from its owner and converted into
whiskey. The court held the property was not changed in
the hands of the wrongdoer and the whiskey belonged to the
owner of the original material, no matter how much it had
been increased in value. The case of *Pennell* v. *Deffell* (53
Eng. Chy. 372, 388, 389) discusses the principle as thus stated
and agrees to it.

That a partner occupies a fiduciary position with regard to
his copartners and the funds of the firm, and will not be per-
mitted to make a personal profit out of the use of such funds,
is, I think, clearly established. (1 Lindley on Part. [2d Am.
ed.] 303; *Featherstonhaugh* v. *Fenwick*, 17 Ves. Ch. 298;
*Anderson* v. *Lemon*, 8 N. Y. 236; *Mitchell* v. *Read*, 61 id.
123; *Riddle* v. *Whitehill*, 135 U. S. 621.) Although part-
ners do not in the strict sense of the term occupy the position
of trustees towards each other and towards the firm funds,
yet the position is one of a fiduciary nature, calling for the
maintenance and exercise of the greatest good faith between
them. Such a relationship authorizes the same remedy on
behalf of the wronged partner as would exist against a trustee,
strictly so called, on behalf of a *cestui que trust*. (Per Jessel,
M. R., *In re Hallett's Estate*, 13 Ch. Div. 696, 712.) While
legally incorrect to describe the fraudulent abstractions made
by Gilman of the funds of the firm as embezzlements, the
description is harmless. It was a monstrous and gross breach
of the duty he owed the firm, and the right of the firm to fol-
low the funds is not affected because the act could not be
regarded in law as an embezzlement. The right to follow the
funds springs from the fiduciary nature of Gilman's position
with regard to them. These general positions are not really
denied by the defendant. It is claimed, however, that the
tracing and identification of the funds have not been suffi-
ciently proved in fact, and it is also urged that there has been
an actual mingling of firm funds with the private funds of
Gilman in the purchase and maintenance of the policies. I

have looked carefully through the evidence upon these ques-
tions of fact, and I think the findings of the referee are fully
sustained and that no exception can prevail on such grounds.

If these preliminary questions be decided against him, the
counsel for defendant then urges that the rule clearly is, if
the trust fund has become mingled with money or property of
the trustees or others, equity impresses the proceeds with a
trust to an amount equal to the original trust fund, and inter-
est, and will go no further. He then claims that the firm
funds which went to the purchase of the policies and the pay-
ment of the annual premiums were mingled with the property
right of the wife, called her insurable interest in her husband's
life, and so the policies were not wholly the result of the use
of those firm funds, and, therefore, the plaintiff can have only
a lien on the policies or the moneys arising from their payment,
to the amount of the premiums paid with the firm funds, and
the interest thereon. This is really the chief question in the
case.

Where moneys have been misapplied and have been used as a
portion of a larger amount which has been invested in other prop-
erty, the property thus acquired does not as a whole belong to
the owner of the moneys misapplied. It does not belong to him
because it has not been purchased or acquired wholly with his
money or funds, and hence it is that such property is held
charged with a lien at least to the amount of the trust funds
invested in it. It is not necessary to here decide it because we
take another view of the facts, but I am not at all prepared to
admit that under no circumstances is the *cestui que trust*
entitled to recover back anything more than the amount of his
property and interest, where there has been a mingling of
funds. In case the trustee took a thousand dollars of trust
funds and five hundred of his own, and purchased property
which advanced in value to twice its original sum, I have seen
no case where the point has been determined that the whole
increased value belongs to the trustee, and that only the origi-
nal sum wrongfully taken and interest can be given to the
*cestui que trust*, although it was by reason of the wrongful

use of the trust funds that the trustee was enabled to realize such value. If in such case the *cestui que trust* were not allowed to at least participate proportionately in this increased value it would appear to be a violation of the principle that the trustee cannot ever be permitted to make a profit out of the use of the trust funds. It seems to me to be a case for the application of the doctrine that the parties became co-owners of the property at the option of the *cestui que trust*, in the proportion which their various contributions bore to the sum total invested.

In this case, however, the defendant is enabled to claim a mingling of funds and property only by treating the right of a wife to insure the life of her husband for her benefit as a species of property of her own which has been mingled with the funds of the firm, the result of the combination being the procurement of the policies.

We do not regard this right as property in any such light as to bring the case within the principle of the authorities upon the subject of a mingling of funds in the purchase or acquisition of other property. The right of a wife to insure the life of her husband for her own benefit is not property. It is more in the nature of a power or a privilege to make a valid contract. It is a *status* and not a property right. The common law upon motives of public policy held that there must be what was termed an insurable interest in the life which was insured or else the policy was a dangerous kind of a wager and, therefore, void.

To take a policy out of such a class it was necessary to show that the insured had some interest in the continuance of the life of the *cestui que vie*. Who had such an interest as to give a right of insurance was frequently a matter of some discussion and of possible doubt. It may not even now perhaps be said that the precise nature, character and extent of the interest in another's life, which shall render that life insurable, have been formally and plainly laid down. It is said by the Federal Supreme Court that one essential is that the policy shall be obtained in good faith and not for the purpose of

speculating upon the hazard of a life in which the insured has no interest. (*Continental Mutual Life Ins. Co.* v. *Schaefer,* 94 U. S. 457, 460.)

An interest which is insurable must be an interest in favor of the continuance of the life and not an interest in its loss or destruction. If any person could be thought to have an interest in the continuance of the life of another, it would be a wife in the life of her husband. Judge ALLEN, in *Baker* v. *Union Mutual Life Ins. Co.* (43 N. Y. 283), regarded the question as decided that a wife had at common law an insurable interest in the life of her husband. Judge ANDREWS held to the same effect in *Brummer* v. *Cohn* (86 N. Y. 11, 14). These cases favor the view that the statute upon the subject of the insurance of the husband's life in favor of his wife, while it regulates, does not create the right. I do not intimate that if the statute created the right it would in any way alter its nature. That such a policy was valid at common law simply makes it clearer that it is the nature of the relationship between man and wife that makes the policy valid and relieves it from the objection that it is a wager policy. That relationship is not property in any fair sense of the term. It creates an insurable interest in the life of another, of a nature the same as a parent has in a child or a child in a parent, that is, an interest in the preservation of the life and not in its destruction. Being so circumstanced, a policy of insurance upon such life is not a wager policy, and is, therefore, a valid policy. It is the same question, but it may perhaps appear a little clearer when it is asked whether the power or privilege of a parent or child or creditor to insure the life of his child or parent or debtor is property?

A man' has an insurable interest in his own life. If he take trust funds and procure such insurance, has he thereby mingled those funds with other property, *i. e.*, with his right to insure his own life? And can it be said that the policy is the product of such mingled funds and property so that nothing but the original amount of the trust funds and interest can be recovered back from the estate? The fact is

apparent that a policy of insurance upon a life is not a policy of indemnity. The sum named in the policy is to be paid when the insured life has ceased, no matter how really value-less such life may have in the meantime become. The power of the wife to procure insurance is not in the least unfavorably affected by the fact that insurance in her favor has already been secured. As was said by SHAW, Ch. J., in *Loomis* v. *Eagle Life Ins. Co.* (6 Gray, 396), the amount of the insurance is immaterial. The premium is computed upon the law of averages to be the exact equivalent for the risk. So if insurance had been taken out by the husband on his life in the wife's name, she could herself take out more upon just as favorable terms and just as expeditiously as if none had been taken. No one company might desire to go above a certain amount upon any one risk, but the ability to procure further insurance is practically unrestrained. The wife has, therefore, suffered no loss by the original procurement of this insurance and its subsequent maintenance unknown to her, so long as the premiums have not been paid with her moneys or in any way from her estate. In other words, her property has not been used for any purpose. Her power to obtain valid insurance upon his life remained wholly unimpaired and unaffected by the insurance already obtained.

The fact that she had what is termed an insurable interest was only material for the purpose of upholding the validity of the insurance in question. I cannot see how it can be regarded as property in any event. That a life insurance policy has not the features of a contract of indemnity and is not such a contract, has been unquestioned for a number of years. (*Rawls* v. *Life Ins. Co.*, 27 N. Y. 282; *Olmsted* v. *Keyes*, 85 id. 593.)

The case of these policies is very much like that in *Baker* v. *Ins. Co.* (43 N. Y. *supra*), where Judge ALLEN said the insurance was effected by the husband for the benefit of his wife and as a provision for her in case of his death. It was there stated that the case would not be changed if the policy were regarded as having been procured by the wife, because

the husband was in truth the actor and represented the wife, and she, in claiming the benefits of the policy, necessarily ratified and confirmed the compact as it was made, and with all its terms and conditions. Therefore, this case is to be looked at with reference to the fact that every dollar of the moneys which procured and maintained these policies in existence belonged to the firm represented by the plaintiff, and that Gilman had no more right to invest or use these funds in the manner he did, than would any third person who had procured them without any right or title.

It has been said that the husband when he procures an insurance for his wife's benefit, acts as her agent or represents her, and that she has a vested interest in the policies the moment they are delivered by force of the statute permitting them to be made in this form. (*Whitehead* v. *New York Life Ins. Co.*, 102 N. Y. 143.) This is doubtless true in the case of the husband procuring the insurance with funds which belong to him or to his wife, but where the premiums are paid with moneys which in truth do not belong to him, and which the husband misapplies in so paying, and by which he violates his obligation to the true owner of the moneys thus used, the wife in such case must claim the policy subject to the means by which the husband procured it and she must adopt all his methods. The moneys in the hands of the company could not be recovered back by the *cestui que trust* if received by the company in good faith, because it would stand in the position of a *bona fide* purchaser, yet the policy itself would stand as the representative of these trust moneys, and the right of the wife would be to that extent subordinate.

This principle has, in effect, been decided in New Jersey in the case of *Shaler* v. *Trowbridge* (28 N. J. Eq. 595).

It was there held upon almost identical facts that there was no public policy which favored the wife at the expense of the principle that trust funds could be followed, and that no profit could in any way arise in favor of the trustee who used them. It also held that the wife could not be permitted to avail herself of the proceeds of policies paid for her by her husband

with trust funds. It is true in that case the policies were originally taken out in the name of the husband and subsequently made payable to the wife, and it is urged that there is a difference in the two cases, because in the New Jersey case it was the husband's insurable interest which was insured and then assigned, and that in this case it is the wife's interest which was originally insured. But we hold upon the facts in this case that the taking out of the policies in the name of the wife does not alter the principle as to trust funds. The *cestui que trust* is entitled to follow his funds and to take the moneys or the policy at his option.

The case of *Central Bank of Washington* v. *Hume* (128 U. S. 195) is not in point. The moneys there used were in truth the property of the husband, although he was insolvent, and he used some of his property to purchase insurance for the benefit of his wife and children.

The Supreme Court held that a policy of insurance taken out by the husband in the name and for the benefit of the wife, made the contract a contract with the wife, and that even though the premiums were paid by the insolvent husband with moneys which, or some part of which, ought to have been used for the payment of his debts, yet if there were no fraud as between the wife and the company, the wife could hold the policy as against the creditors of the husband, except the amount which had been wrongfully used in the payment of premiums. If the amount of the husband's estate used to pay premiums were no more than reasonable and moderate under the circumstances, it was further held that the creditors could not recover back the moneys so paid for them, although the husband was, at the time of their payment, insolvent. It was said the interest insured did not belong to the husband or his creditors; that the contracts were not payable to the husband, his representatives or his creditors; that no fraud on the part of the wife, the children or the insurance company was shown or pretended; and that there was no gift or transfer of the debtor's property, unless the amounts paid for premiums were to be held as excessive.

That is a very different case from the one under considera-
tion. It was no trust fund (within the meaning of that term
when used to authorize the following thereof) which went
to pay for the policy in that case. The moneys belonged to
and were the property of the husband. They might under
certain circumstances be reached in proceedings after judg-
ment and return of execution, but the title was in the husband
and he used his own property to procure the insurance. Hav-
ing done so, the policy thus procured became a contract with
the wife and her insurable interest in her husband's life was
thus made effectual. The creditors could not follow the
moneys into other property and demand such property. No
principle of following trust funds was involved.

In this case, however, there is the fact which alters and col-
ors the whole transaction and is fundamental and controlling
in its nature, and that fact is that the moneys which procured
the insurance were trust moneys, and although invested in the
policies, they were subject at the very moment of such invest-
ment to the right of the owner of the funds to follow them
into whatever change of form they might assume, and to claim
the thing into which they were changed as if it were the orig-
inal fund. In the case in the Federal court the whole matter
was discussed with reference to the violation of the statute of
Connecticut, based upon the statute of Elizabeth (13 Eliz.
ch. 5) prohibiting the transfer of the property of an individual
in fraud of his creditors. We have a statute to the same effect
(2 R. S. 137, § 1). The learned chief justice said that the stat-
ute was passed to prevent debtors from dealing with their
property to the prejudice of their creditors, but dealing with
that, which creditors irrespective of such dealing could not
have touched, was within neither the letter nor the spirit of
the statute. This was spoken of the insurable interest of the
wife. And it was spoken in regard to creditors as that term
is generally used. In this case it is not in the simple charac-
ter of a creditor of Mr. Gilman, or of the defendant, Mrs. Gil-
man, that the plaintiff asks relief. He seeks the aid of a court
of equity to enable him in the character of a *cestui que trust,*

to follow his property which was wrongfully converted by one bearing towards him the obligations of a trustee, and by such trustee invested in these policies, and such *cestui que trust* now asks in substance for his own property, or for the property into which his trust funds were wrongfully converted, and we think he has the right to recover the property which represents and stands in the place of the original trust fund.

The case in the Federal court is not at all parallel, and is, therefore, no authority against our contention. The procurement of policies of insurance by the husband in the wife's name, under the facts developed in this case, does not prevent the *cestui que trust* from following and claiming the trust funds or their proceeds. If the proceeds of these policies had been greater than the whole amount of the indebtedness of the husband to the *cestui que trust*, arising out of the husband's breach of trust, we do not decide what might in equity be the different rights of the wife and such *cestui que trust* in the balance, or whether any different rule could be logically applied. The husband in this case converted over $200,000 of what stood in the nature of a trust fund, and the plaintiff recovers only a little over one-fourth thereof in case the judgment on the referee's report be affirmed.

We simply decide the case now before us. As to other questions discussed in the defendant's brief we have carefully considered them, and we think there was no error in the result arrived at by the referee.

The order of the General Term is, therefore, reversed and the judgment entered upon the report of the referee *is* affirmed, with costs to the plaintiff at General Term and in this court.

All concur.

Order reversed and judgment affirmed.