(18 App. Div. 73.)

### HOLLISTER v. SIMONSON et al.

(Supreme Court, Appellate Division, Second Department. May 11, 1897.)

1. JOINT VENTURE—RIGHTS OF PARTIES.

Plaintiff and defendant entered into a joint undertaking by which defendant bought certain real estate to hold until it could be sold for the benefit of both parties. Defendant promised always to confer with plaintiff "if anything is done in regard to the business." Plaintiff agreed to advance money on account of the undertaking, and did advance a large part of it. Defendant sold the property without notice to plaintiff. The price was such that the money advanced by plaintiff was wholly lost. *Held,* that plaintiff could not be compelled, notwithstanding such sale, to advance the balance of the sum agreed on.

2. SAME—CONVEYANCE TO THIRD PERSON.

Nor could such sale be sustained as against plaintiff unless the purchasers were without notice of plaintiff's rights.

Appeal from judgment on report of referee.

Transferred from First department.

Action by George C. Hollister against William H. Simonson and others. There was a judgment in favor of defendant William H. Simonson for $16,851.59, damages and costs, and in favor of defendants Washington Winsor and William H. Duckworth $165, costs, and plaintiff appeals. The action was tried in the court of common pleas, and the appeal was transferred to the appellate division of the supreme court, by operation of law. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Franklin Pierce, for appellant.

Sidney H. Stuart, for respondent Simonson.

Cromwell G. Macy, for respondents Winsor and Duckworth.

WILLARD BARTLETT, J. This litigation grows out of a joint undertaking between George C. Hollister, or one Vorhis, his assignor, on the one hand, and William H. Simonson, on the other, whereby the latter acquired certain real property at the corner of Lexington avenue and Forty-Eighth street, in the city of New York, and agreed to "carry" it, as the phrase of real-estate dealers is, by means of contributions of money from both parties, and ultimately sell it for their common benefit. The whole agreement was not in writing; but its character is largely disclosed by a memorandum, dated January 6, 1892, and signed by Simonson, in reference to the distribution of the proceeds of the enterprise between him and Vorhis. This paper was prepared in order that the rights of Vorhis thereunder might be assigned to the plaintiff, and an assignment thereof was subsequently duly made. It assumes

at the outset that the property is to be sold for the benefit of Vorhis and Simonson, for it declares that, "upon a sale of said property, the proceeds are to be distributed as follows"; and it then goes on to specify what is to be received by Simonson, and what by Vorhis. Thus, $3,500 in notes made by Simonson, and paid out by him, are to be considered as cash, and repaid to him. All expenses in relation to said property, for lawyers' fees, commissions, brokerage, and disbursements, are to be paid. Notes to the amount of $15,500 made and advanced by Simonson, and $9,500 by Vorhis, are to be repaid. The income from the property is to be applied to the running expenses, taxes, water rents, and interest on mortgage, while any surplus is to be retained for the reduction of the mortgage indebtedness. The amounts necessary to be further advanced for mortgage interest, or any expenses in changing loans, and for taxes, assessments, and repairs, are to be paid equally by Simonson and Vorhis, and repaid to them. All guaranties for the payment of claims against the property are to be paid. The claim of Simonson against the property for $17,683.50, with interest, is to be paid, as is also the claim of Vorhis for $5,200 and interest, or they are to be paid pro rata in case there is not sufficient to pay the same in full; and, finally, any balance which may remain after the above payments is to be divided between Simonson and Vorhis equally.

The plaintiff acquired all the rights and assumed all the obligations of Vorhis under this instrument. It is conceded by the referee that he is entitled to be credited with upward of $22,000, paid thereunder by him and Vorhis. But Simonson claims that he should have paid more than this. Simonson did not take title to the property in his own name, but the conveyance was made to the defendant Thomas, who was evidently, however, simply Simonson's representative in the whole transaction. Upon the claim that the plaintiff had made default in paying his share of the charges and expenses, Simonson, without notice to the plaintiff of the fact or the time or the place of the sale, allowed Thomas to sell the premises. The purchaser was the defendant Winsor, a person who appears to have been utterly unacquainted with the property or the title, who is said to have paid $1,750 over and above the mortgages and other liens thereon, and who immediately conveyed it to the defendant Duckworth, an old and intimate friend of Simonson's.

I have said that Simonson allowed this sale to take place without notice to the plaintiff. I think this conclusion is required by a fair consideration of the evidence. It is true that Simonson speaks of having informed the Hollisters by letter, after November 3, 1893, that he was going to sell the premises; but he confesses his inability to find any such letter, and admits that his recollection about it is indistinct; while the plaintiff disavows knowledge of the alleged communication, and declares that he knows of no letter received by him from Simonson which has not been put in evidence. The statement by Simonson at the interview of November 3, 1893, to the effect that he would not and could not carry the property any longer, was by no means equivalent to a specific no-

tice of an intention to sell it by reason of the alleged default of the plaintiff. It was made in the course of a conversation in which many matters were discussed with considerable animation, and the circumstances under which the parties separated indicate that Simonson could hardly then have made up his mind to attempt to enforce a forfeiture of the plaintiff's rights in the joint enterprise. Such a forfeiture has practically been adjudged by the decision of the referee in the present action. The suit was brought to establish the interest of the plaintiff in the premises, notwithstanding the sale to the defendants Winsor and Duckworth, or, if such relief could not be had, to charge the defendant William H. Simonson with the amounts paid to him by the plaintiff or the plaintiff's assignors, as money had and received. The complaint alleged that in pursuance of the memorandum of January 5, 1892, the plaintiff and his assignors advanced $30,647.09 to Simonson, to be used in paying off the mortgage and other liens upon the property; that Simonson had failed to carry out the agreement of January 6, 1892, by omitting to pay one-half the expenditures over and above the income from said property; that Simonson refused to make any statement concerning the rents, income, and expenditure other than in a vague and general manner, which furnished no adequate information; and that, by reason of his failure to comply with the plaintiff's demand in this respect, the plaintiff had been unable since November 1, 1893, to ascertain what sums, if any, were necessary for him to furnish to meet the provisions of said contract. The complaint also set out the facts already stated in regard to the sale and conveyance of the property, which occurred on the 14th of December in the same year.

The referee has decided, in substance, that Simonson performed his part of the contract in respect to the property, while the plaintiff failed to perform his part. He declares that "Simonson was willing to furnish, and did furnish, plaintiff sufficient information to enable him to know what amount was necessary for him to pay, and never refused to do so." He holds that the original understanding with Vorhis, which formed the basis of the agreement of January 6, 1892, was "to the effect that Simonson should in his own way have the handling and management of the property, including the privilege of causing a resale in his discretion, for the purpose of obtaining and distributing the proceeds thereof between them." So absolute does he deem Simonson's authority to have been, that, in the exercise of good judgment, he says Simonson "was warranted in terminating the disastrous business, whether plaintiff was in default or not." The sale by Thomas to Winsor is upheld, and the total consideration of $222,000 is pronounced adequate by the referee, although, only a few weeks before the sale, Simonson had said the property was worth at least $350,000, and the expert evidence would have justified, if it did not require, a finding that the market value was not less than $270,000 at the time when Winsor is said to have purchased. Winsor is adjudged to have been a purchaser in good faith for value, without notice of anything to impair his title; and the title of Duckworth, whose deed recited the payment of one dollar and other good

and valuable consideration, is maintained upon the authority of Hayes v. Nourse, 114 N. Y. 595, 22 N. E. 40. Finally, the referee finds that the plaintiff has not paid his one-half of the expenses of the property, but still owes $11,467.95 on account thereof, for which amount, together with interest and costs, aggregating $16,851.59, he directs judgment in favor of the defendant William H. Simonson.

The judgment entered on this report leaves the plaintiff in the unfortunate position of having put at least $22,000 into this Lexington avenue and Forty-Eighth street property, which he must utterly lose, without having had any opportunity to protect himself by purchasing the premises, or having them purchased in his behalf, at the sale, in addition to which loss he is compelled to pay upward of $16,000 more on account of his association with Simonson in the venture. In view of the facts of the case, this result does not strike the mind as equitable. At the time of the sale, Simonson and the plaintiff were parties to a joint undertaking in respect to the control, management, and disposition of the property in question. Assuming that the control and management were wholly committed to the discretion of Simonson, and even that he could determine the time of sale, irrespective of the wishes of his associate in the enterprise, the plainest principles of equity demanded that he should not sell without notice to that associate, and, furthermore, that, in the event of a sale, he should exert his best endeavors to procure the highest possible price for the property. The obligation to give notice of every important step which he took in respect to the premises was expressly assumed by Simonson, who said to Vorhis, when the original arrangement was made, "If anything is done in regard to the business, I will always confer with you about it." I find no denial that Simonson used this language, but his counsel suggests that the word "business" was ambiguous, and that the statement, at most, was a mere promise, without consideration. I cannot assent to this view. The words were manifestly intended as an assurance that Simonson would do nothing of importance concerning the property without notifying Vorhis; and that assurance is available in favor of the plaintiff, who succeeded to the interest of Vorhis, and who paid thousands of dollars into the enterprise, as the assignee of that interest. As to the sale, Simonson appears wholly to have neglected his duty to the plaintiff. It will be remembered that the title stood in the name of Thomas. "I told Thomas," says Simonson, "that I was tired of paying out any more money, and I could not pay it out; and he could put it up, and do as he liked,—sell it or keep it, just as he liked. I don't think I said anything about what he should sell it for. I don't think I told him." The narrative of the subsequent sale is contained in the record, and it is impossible to read it without a very strong suspicion that the purchaser Winsor was a dummy, and the entire transaction a sham, for the purpose of placing the property where it could not be reached by the plaintiff.

Although the plaintiff and the defendant William H. Simonson were not partners in a strict legal sense, they were associates in a lawful undertaking, based upon an agreement partly oral and partly in writing, the provisions of which were and are enforceable upon the

principles of the law of partnership. King v. Barnes, 109 N. Y. 267, 16 N. E. 332; Wilcox v. Pratt, 125 N. Y. 688, 25 N. E. 1091. One of these principles is that "although partners do not, in the strict sense of the term, occupy the position of trustees towards each other, and towards the firm funds, yet the position is one of a fiduciary nature, calling for the maintenance and exercise of the greatest good faith between them." Holmes v. Gilman, 138 N. Y. 369, 377, 34 N. E. 205. There was an utter failure on the part of Simonson to observe this rule in the case at bar. It demanded that he should notify the plaintiff of the sale, and see that it was so conducted as to realize the market value of the property. He did neither. I entertain no doubt that the plaintiff is entitled to be put as nearly as possible in the same position as though no such sale had taken place, and that it should be set aside unless there are rights in the alleged purchasers, Winsor and Duckworth, which prevent that course from being taken. Those defendants may be able to prove upon a second trial that they were bona fide purchasers for value, without notice; but I do not think they established their character in that respect upon the trial under review. Neither of them took the stand as a witness; so that all we know of their participation in the transaction is derived from the testimony of others. Unless we are to ignore the rules that ordinarily guide persons of intelligence in reasoning in regard to the acts of others, that testimony points clearly to the conclusion that these men were acting, not in their own interest, but in the interest of some one else. People who purchase property in good faith for themselves seldom buy it in the way they did. Considering Winsor's apparently slight acquaintance with the premises, and Duckworth's intimacy with Simonson, together with the peculiar circumstances of the sale, the immediate conveyance to Duckworth, and the omission of these defendants to testify in their own behalf, I think the referee erred, as matter of fact, in holding that they were bona fide purchasers for value.

The views thus far expressed render it necessary to order a new trial. We are therefore not required to determine whether the referee was correct in ruling that the plaintiff was in default under the terms of the memorandum of January 6, 1892, inasmuch as the sale without notice was not authorized, even if he had failed to perform his obligations under that instrument. When the case is tried again, a full accounting can be had between the plaintiff and Simonson; and, if it shall be found that anything is payable to the plaintiff in order to put him in the position he would have occupied if the property had not been sold without notice, he can recover that amount of Simonson individually, if there prove to be obstacles in the way of charging it against the premises.

In discussing this case, I have referred only to the agreement which originated with Vorhis, was partly expressed in the memorandum of January 6, 1892, and of which the plaintiff became the assignee. By an amendment to the complaint, the plaintiff alleged the making by Simonson of an independent oral agreement with him personally, to the effect that Simonson, in order to induce the plaintiff to carry out the contract subsequently embodied in the memorandum

of January 6, 1892, promised to purchase the property himself, or cause the same to be purchased by a responsible third person, who would execute proper papers to secure to Simonson and the plaintiff their rights arising out of the payments they had made or should make. Testimony was given by the plaintiff in support of this allegation, but the referee evidently found against him on this branch of the case, as he says in his decision that Simonson made no agreement with the plaintiff, and treats their respective obligations as growing wholly out of the transfer from Vorhis to the plaintiff. It cannot be held that the referee was not at liberty to disbelieve one of the parties to the action; and therefore I have considered the evidence upon the assumption that the proof does not establish the averments of the amendment which was made upon the trial. But even adopting this view, and looking at the terms of the agreement, express and implied, as they appear from the other testimony in the case, on both sides, the conclusion still remains clear that the sale as made was inequitable and unwarranted.

The judgment must be reversed, and a new trial granted, with costs to abide the event. All concur.