In re BELL & BECKWITH, Debtor.

Patrick A. McGRAW, Trustee, Plaintiff,

v.

Roscoe R. BETZ, Jr., et al., Defendants.

Bankruptcy No. 85–0024.
Related No. 83–0132.

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

Sept. 7, 1994.

20

Mary Ann Whipple, Fuller & Henry, Toledo, OH, for plaintiff.

Bruce S. Schoenberger, Toledo, OH, for defendant Society.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This case comes before the Court on remand from the Court of Appeals, and after a Hearing on Plaintiff's Writ of Execution Issued to Defendant to Garnish Defendant's Interests in the Bell and Beckwith Profit Sharing Retirement Plan and Trust (hereafter the "Plan"). A Hearing was held on June 22, 1994. At the Hearing, the parties were afforded the opportunity to present evidence and arguments they wished the Court to consider in reaching its decision. This Court has reviewed the arguments of Counsel, all exhibits presented as well as the entire record of the case. Based upon that review, the Court orders that Defendant Society Bank & Trust pay to Patrick A. McGraw, as Trustee of the Debtor's estate, the amount of Seventy-two Thousand Eight Hundred Forty-four and 25/100 Dollars ($72,844.25).

### FACTS

Bell and Beckwith (hereafter "B & B") was a limited partnership that conducted a stock brokerage business in Toledo, Ohio. A liquidation proceeding under the Securities Investor Protection Act, as amended, 15 U.S.C. Section 78aaa, et seq. (hereafter "SIPA") was commenced with respect to B & B on February 5, 1983, after it was discovered that B & B's managing general partner, Edward P. Wolfram, Jr. (hereafter "Wolfram"), had embezzled approximately Forty-seven Million Dollars ($47,000,000.00) from the brokerage. It appears that Wolfram's fraud commenced as early as 1973.

The Wolfram fraud involved the severe overvaluation of certain securities held in B & B customer margin accounts controlled by Wolfram, and the excessive borrowings by Wolfram against these overvalued securities. Annual financial statements prepared by accounting firms employed by B & B in 1976 through 1982 showed that the firm had a positive net income during these periods of time. Accounting evaluations, done under Generally Accepted Accounting Practices after the Bankruptcy action was initiated to reflect the impact of the Wolfram fraud, revealed that B & B was insolvent and had no net income for this period of time. For example, by the audit date in 1982, the net income reported by B & B's auditors was Two Hundred Fifty-five Thousand Three Hundred Seventeen Dollars ($255,317.00). However, if the bad debt expense related to the Wolfram-controlled accounts containing the overvalued securities is properly reflected in accordance with Generally Accepted Accounting Practices, a deficiency of income over expenses of Twelve Million Nine Hundred and Five Thousand One Hundred Seventy-five Dollars ($12,905,175.00) should have been reported.

B & B established the Profit Sharing Retirement Plan and Trust (the "Plan") in 1974. Toledo Trust Company/Trust Corp was the original trustee of funds maintained in the Plan, including the period from 1976 through February 5, 1983. Society Bank & Trust (hereafter "Society") is the successor in interest to The Toledo Trust Company and

Trust Corp Bank, and continues as trustee for the Plan through the present time.

The following provisions 3.1 and 3.4 of the Plan governed the terms upon which contributions were made to the Plan by B & B, as employer, for the participants, including Wolfram:

## ARTICLE III

### Contributions

3.1 The Plan is effective as of April 1, 1974. *Contributions shall be made by the Employer only out of the Employer's net income from its business,* provided that if such net income of the Employer is less than the total Employer contributions provided for herein for any Plan Year, contributions on behalf of each Participant for any such year shall be reduced ratably. *Net income shall be determined in accordance with generally accepted accounting practices and shall be computed before any provisions for contributions under the Plan for any such year.* In each Plan Year the Employer shall contribute on behalf of each participating Owner–Employee who elects to participate and each Partner–Employee an amount not more than five percent (5%) of the participants total Compensation for the year. In computing the amount of the contribution of the Employer the amount of earned income to be taken into account in the case of each Owner–Employee and Partner–Employee and the amount of the Compensation to be taken into account in the case of each Employee shall not exceed $100,000 in each year. The limitations hereinabove stated apply to the aggregate contributions made by the Employer to all qualified plans of the Employer in each Year.

\*    \*    \*    \*    \*    \*

3.4 *All contributions made by or on behalf of each Participant and all investments made with contributions and the earnings thereon shall be credited to a separate account maintained for him under the Plan.* A participant's interest in all contributions and other amounts credited to his account shall immediately become and at all times remain fully vested and nonforfeitable. Within sixty (60) days after the close of each plan Year the Employer shall furnish each Participant a statement of the amounts credited to his account during and at the end of such year. (Emphasis added.)

Contributions made by B & B, as Employer, for the Plan account of Wolfram from 1976 through 1983 total Twenty-six Thousand Four Hundred Thirty-one and 45/100 Dollars ($26,431.45). The amounts of these contributions have been stipulated by the parties. B & B actually had no net income and had unreasonably small capital to continue its brokerage business during the times that these contributions were made by B & B to Wolfram's account. Thus, the contributions violated paragraph 3.1 of the Plan which required B & B to have net income before contributions to the Plan were made.

The net assets in Wolfram's account were Sixty-six Thousand Three Hundred Fifty-three and 34/100 Dollars ($66,353.34) as of December 31, 1982, the valuation date nearest to the February 5, 1983 commencement of the B & B liquidation proceedings. Over time, the improper contributions of Twenty-six Thousand Four Hundred Thirty-one and 45/100 Dollars ($26,431.45) were commingled in the Wolfram Plan account with proper contributions. No contributions were made to the Plan after February 5, 1983. As of March 31, 1994, the Plan account valuation date nearest to the date of the Hearing, the total value of the assets in the Wolfram Plan was One Hundred Eighty-two Thousand Three Hundred Eighty-five and 34/100 ($182,385.34). Since the commencement of the B & B liquidation proceeding, Society and its predecessors have charged a total of Thirty-four Thousand Eight Hundred Eighty-four and 81/100 Dollars ($34,884.81) in administrative expenses to the Wolfram Plan account.

The Trustee obtained a final judgment, which is unsatisfied in this adversary proceeding against Wolfram in the total amount of Twenty-nine Million Dollars ($29,000,000.00) plus interest, and served a Writ of Execution on Society to obtain and apply Wolfram's interests in the B & B Plan to the judgment against Wolfram. Society objected to the Writ of Execution. Wolfram has not appeared in the Trustee's proceedings in aid of execution and has not objected to the writs of execution served upon Society.

### DISCUSSION

Orders to turn over property of the estate are core proceedings pursuant to 28 U.S.C. Section 157. Thus, this case is a core proceeding.

This matter comes before the Court on remand from the Circuit Court of Appeals in *In re Bell & Beckwith,* 5 F.3d 150 (6th Cir.1993). This Court is to determine the amount of contributions made by B & B to the Plan that are to be held void *ab initio,* as these funds were deposited in violation of the terms of the Plan. This issue has been addressed in the factual findings supra, and has been stipulated by the parties. These contributions totalling Twenty-six Thousand Four Hundred Thirty-one and 45/100 Dollars ($26,431.45) are to be transferred to Patrick A. McGraw, Trustee (hereafter "Trustee") for the benefits of the Creditors of the Debtor's estate.

■ Also at issue is whether, and in what proportion, the increase in value of the assets of the Plan and the expenses associated with this increase should likewise be transferred to the Trustee as earnings on the void contributions. This issue was not addressed by the Court of Appeals. An analogous principle of trust law provides that, "Where a commingled mass of trust property or funds and other property or funds, commingled by a trustee wrongfully, increases in value, the beneficiary should share in the increase at least in proportion to his contributions to the mingled mass in its original condition." 76 American Jurisprudence 2d, Trusts § 303, at 316–17. See also cases cited therein: *Bird v. Stein,* 258 F.2d 168 (1958), cert. denied, 359 U.S. 926, 79 S.Ct. 608, 3 L.Ed.2d 628; *Regal Insurance Co. v. Summit Guaranty Corp.,* 324 N.W.2d 697, 705 (Iowa 1982); and *Holmes v. Gilman,* 138 N.Y. 369, 34 N.E. 205 (1893).

Following this principle, this Court holds that the portion of the increase in value of the Plan funds that should be paid to the Trustee for the benefit of creditors should be equal to the proportion of contributions held void *ab initio,* Twenty-six Thousand Four Hundred Thirty-one and 45/100 Dollars ($26,431.45), to the total funds in the Plan at the commencement of the B & B liquidation proceedings, Sixty-six Thousand Three Hundred Fifty-three and 34/100 Dollars ($66,353.34). Thus, the Trustee is due Forty Percent (40%) of the increased value of the securities held in the Plan. The latest valuation of the Plan, discussed supra, places its value at One Hundred Eighty-two Thousand Three Hundred Eighty-five and 34/100 Dollars ($182,385.34). The original value at the commencement of the liquidation proceeding, also discussed supra, was Sixty-six Thousand Three Hundred Fifty-three and 34/100 Dollars ($66,353.34), so the increase in the value of the assets of the Plan was One Hundred Sixteen Thousand Thirty-two Dollars ($116,032.00). The portion of this increase due the Trustee is Forty Percent (40%) of this figure, which is Forty-six Thousand Four Hundred Twelve and 80/100 Dollars ($46,412.80). Adding this portion to the original funds contributed to the account, Twenty-six Thousand Four Hundred Thirty-one and 45/100 Dollars ($26,431.45), the Trustee is due Seventy-two Thousand Eight Hundred Forty-four and 25/100 Dollars ($72,844.25) in total.

■ The Trustee also alleges that Society should reimburse the Debtor's estate for the administrative expenses charged by Society to the Plan in payment of services provided regarding the Plan's administration. The basis of this argument is that if Society had not taken the improperly contributed funds, there would have been no administrative expenses that would have been charged against them. This Court declines to accept this line of reasoning. This argument places blame on Society for accepting funds from B & B in reliance on the financial statements prepared by B & B's accountants, where income was

overstated due to the misevaluation of assets. Requiring a trustee of a retirement plan to revalue the assets on the depositor's balance sheets places a clearly overly cumbersome duty on the administration of the trust account that would only serve to unreasonably increase costs in the majority of circumstances. Further, if the Trustee in this case argues that the income earned through the administration of the Plan should be returned along with the misplaced funds, it is equitable that the expenses associated with that income should be reduced from the gross income earned. In the case herein, Society has already charged its expenses from the Plan, and the income calculated supra is net of those charges. Thus, the award of Seventy-two Thousand Eight Hundred Forty-four and 25/100 Dollars ($72,-844.25) is proper.

In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

**ORDERED** that the Society transfer to the Trustee the sum of Seventy-two Thousand Eight Hundred Forty-four and 25/100 Dollars ($72,844.25), within fourteen (14) days from the date of this Order.