Dowie vs. Humphrey.

Dowie, Appellant, vs. Humphrey, Assignee, Respondent.

*September 11 — September 26, 1895.*

*Equity: Following trust fund: Voluntary assignment: Banks and banking.*

Upon the settlement of an estate the administrator turned over to an attorney in fact for the heirs the money of the estate in the form of certificates of deposit, some of which had been issued by an unincorporated bank owned by said attorney in fact, which certificates were accepted by him as so much cash. About two months later, and before the money had been paid to the heirs, the bank of said attorney in fact closed its doors and he made an assignment for the benefit of his creditors. He had disposed of all of said certificates of deposit issued by other banks, except one. None of the proceeds thereof had been placed in his bank, and but a small part could be traced to deposits standing to its credit in other banks at the time of the assignment. It did not appear what precise disposition had been made of the moneys deposited in his bank by the administrator and evidenced by said certificates of deposit issued by it; but between the time of said deposits and the time when the bank closed its doors its payments in excess of its receipts had been greater than the amount of such deposits. *Held,* that the heirs were not entitled to payment of their claims, in preference to other creditors, out of the assets which came to the hands of the assignee, except as to the one certificate of deposit not disposed of by the assignor and so much of the proceeds of the others as could be traced to deposits in other banks.

Appeal from a judgment of the circuit court for St. Croix county: E. B. Bundy, Circuit Judge. *Affirmed.*

On January 21, 1890, one Charles Dowie, a resident of St. Croix county, died intestate. On April 2, 1890, one Silas

Staples was appointed his administrator, and qualified as such. On October 1, 1890, A. J. Goss, of Hudson, was appointed attorney in fact for each and all of the twelve several heirs at law of said deceased, for the purpose of receiving from said administrator and settling with him for all moneys belonging to said estate upon final settlement. Said A. J. Goss was at the time the sole owner of the unincorporated bank known as the Hudson Savings Bank, and continued such owner down to June 15, 1893. As such banker said A. J. Goss received from said Staples on deposit: July 18, 1891, $1,562.36; December 9, 1891, $1,500; September 29, 1892, $2,800; December 22, 1892, $610,— aggregating $6,472.36. At the time said Staples settled his accounts as administrator— April 14, 1893 — he had on hand certificates of deposit in the aggregate amount of $11,722.24, of which sum $6,472.36 consisted of the four certificates issued by the Hudson Savings Bank, as aforesaid, and upon which there was then due $262.15 as accrued interest. He also had six several certificates issued by the Bank of New Richmond, aggregating $2,623.21; and also six several certificates issued by the Manufacturers' Bank of New Richmond, aggregating $1,635; and also a certificate of deposit, issued by the First National Bank of Hudson, for $991.67. At the time of said settlement— April 14, 1893 — the said Staples, as such administrator, turned over all of said seventeen certificates of deposit to said A. J. Goss as such attorney in fact, who also allowed him, as interest on the four issued by his bank, the $262.15 mentioned, and also allowed him, as interest on the certificates issued by the other banks, $23.94. At the same time said A. J. Goss paid back to said Staples $2,320.71, with which said Staples paid all unpaid allowances and liabilities against said estate, leaving the said A. J. Goss liable to the heirs of said estate to the amount of $9,687.62.

On June 9, 1893, the said Hudson Savings Bank, belong-

Dowie vs. Humphrey.

ing to the said A. J. Goss, closed its doors, and June 15, 1893, the said A. J. Goss made a voluntary assignment for the benefit of his creditors to the defendant *Humphrey*, who thereupon qualified as such. Among the assets so transferred to said *Humphrey* as assignee was the said certificate of deposit issued by the First National Bank of Hudson, of $991.67, with $19.82 accrued interest, amounting to $1,011.49, and also the four certificates of deposit issued by the Hudson Savings Bank, and accrued interest, aggregating $6,734.51. Between April 14, 1893, and June 10, 1893, the said A. J. Goss sold, transferred, and disposed of, or drew the money upon, all the other certificates of deposit mentioned, and used and disposed of the same and the proceeds thereof in his own banking business, and no trace of any of said certificates, or of any of the proceeds of any of said certificates, is found by the court, or can be made from the evidence, except that $369.51 thereof was still on deposit in the First National Bank of St. Paul, June 15, 1893, and the same passed to the said *Humphrey* as such assignee, and $67.20 thereof at that time was still on deposit in the Merchants' National Bank of St. Paul, and the same passed to the said *Humphrey* as such assignee.

The trial court found, in effect, that neither the plaintiff nor any of the heirs of the said Dowie estate were entitled to any preference over other creditors of the said A. J. Goss, except that the proceeds of said certificates of deposits so on hand June 15, 1893, and so passed into the hands of said *Humphrey* as such assignee, aggregating $1,448.20, belonged to the estate of the said Charles Dowie, deceased, and that the plaintiff, as one of the twelve heirs of said deceased, was entitled to one twelfth thereof, to wit, the sum of $120.68. From the judgment entered accordingly the plaintiff appeals.

For the appellant there was a brief by *Baker & Helms*, and oral argument by *E. W. Helms*. They contended that

Dowie vs. Humphrey.

the transaction between Mr. Staples and Mr. Goss was equivalent to the payment by Mr. Staples to Mr. Goss of the sum of $9,699.62, in cash, and the deposit of such cash in the vaults of the Hudson Savings Bank by Mr. Goss. The language used in the opinion in the case of *Nonotuck Silk Co. v. Flanders*, 87 Wis. 237, at the foot of p. 239, is exactly in point. Said sum so deposited was a trust fund, and under the "modern rule of equity" it will be presumed that the $7,964.41 remaining in the Hudson Savings Bank and turned over by Mr. Goss to the assignee was a portion of the money so paid in by Mr. Staples. *McLeod v. Evans*, 66 Wis. 401; *Francis v. Evans*, 69 id. 115; *Bowers v. Evans*, 71 id. 133; *Nonotuck Silk Co. v. Flanders*, 87 id. 237; *In re Plankinton Bank*, id. 378; *In re Hallett's Estate*, 13 Ch. Div. 696; *Sherwood v. Cent. Mich. Sav. Bank*, 61 N. W. Rep. 352; *In re Cavin v. Gleason*, 105 N. Y. 256. The case at bar comes within both the logic and the letter of the *Hallett Case*. The facts bring it precisely within the principle illustrated by JESSEL, M. R., on p. 727. See, also, *National Bank v. Ins. Co.* 104 U. S. 54. The balance of the trust fund, to the amount of $1,735.21, is traceable to, and was a part of, moneys deposited by Mr. Goss with banks other than the Hudson Savings Bank, and was transferred to the assignee by said assignment.

For the respondent there was a brief by *Spooner, Sanborn, Kerr & Spooner*, and oral argument by *Chas. P. Spooner*, *A. L. Sanborn*, and *J. B. Kerr*. They cited, besides cases cited in the opinion, *Philadelphia Nat. Bank v. Dowd*, 38 Fed. Rep. 172.

CASSODAY, C. J.  The Dowie estate was fully settled April 14, 1893, and the entire assets of that estate, after paying all allowances and liabilities, were on that day turned over to A. J. Goss, as the attorney in fact of the twelve Dowie heirs. By that transaction A. J. Goss became indebted di-

rectly to the several Dowie heirs for nearly $10,000. Two months afterwards A. J. Goss made a voluntary assignment for the benefit of his creditors to the defendant, *Humphrey;* and on investigation it turns out that his estate is overwhelmingly insolvent. Now, it is contended that *Humphrey*, as such assignee, should pay the Dowie heirs in full, in preference to the other creditors of A. J. Goss.

The trial court, in effect, held that so much of the Dowie estate and so much of the proceeds and avails thereof as had been traced into the hands of *Humphrey*, as such assignee, belonged to and should be treated as the property of the Dowie heirs; but as to the balance of their claims, respectively, they stood on the same footing as other creditors of A. J. Goss. We are constrained to hold that such ruling is in harmony with the more recent adjudications of this court. *Nonotuck Silk Co. v. Flanders*, 87 Wis. 237; *In re Plankinton Bank*, 87 Wis. 378; *Henry v. Martin*, 88 Wis. 367; *Burnham v. Barth*, 89 Wis. 362; *Thuemmler v. Barth*, 89 Wis. 381.

In the first of these cases this court reviewed its former rulings, and sought to put itself in line with what we regarded as the best-considered cases in England and this country. In that case, and partly quoting from the opinions of other courts, it is, in effect, said that the guiding principle is that a trustee cannot assert a title of his own to trust property. If he destroys a trust fund by dissipating it altogether, there remains nothing to be subject to the trust. When trust money becomes so mixed up with the trustee's individual funds that it is impossible to trace and identify it as entering into some specific property, the trust ceases. The court will go as far as it can in thus tracing and following trust money; but, when, as a matter of fact, it cannot be traced, the equitable right of the *cestui que trust* to follow it fails. The right to so follow and reclaim a trust fund is always based upon the right of property, and

is never based upon the theory of preference by reason of an unlawful conversion. *Nonotuck Silk Co. v. Flanders*, 87 Wis. 241, 242.

The opinions of this court in the subsequent cases cited are equally explicit. Thus in *Burnham v. Barth*, 89 Wis. 367–370, Mr. Justice PINNEY said: "When the trust fund cannot be identified or traced into some specific estate or substituted property, and the means of ascertainment fail, the trust wholly fails, and the party can only prove as a general creditor. . . . As the right to trace his trust fund is founded on the right of property, and not on the ground of compensation for its loss, he must be able to point out the particular property into which the fund has been converted. When he is unable to do this, the trust fails and his claim becomes one for compensation only, for the loss of the fund, and stands on the same basis as the claims of general creditors. The rule in the administration of insolvent estates is that equality is equity, *and the burden of proof* is on the claimant to show the facts which entitle him to claim as owner and not merely as a creditor. . . . The court will go as far as it can in tracing and following trust money, but when, as a matter of fact, it cannot be traced, the trust and equitable right of the beneficiary to follow it fails. . . . Where the trust fund cannot be traced, and the substituted property into which it has entered specifically identified, the trust fund must be regarded as dissipated, within the meaning of the authorities,— scattered, dispersed, and, as such, destroyed."

Under these adjudications, can we say that any more than the $1,448.20 of the Dowie estate, as allowed by the trial court, actually passed into the hands of *Humphrey* as such assignee? It will be remembered that A. J. Goss had borrowed from the administrator of that estate, in the years 1891–92, $6,472.36, and that his indebtedness therefor was evidenced by four certificates of deposit, upon which there

was due as unpaid interest, April 14, 1893, $262.15. The several deposits for which said certificates were given were, respectively, made from six to twenty-three months before. True, in settling with the administrator, A. J. Goss accepted these evidences of his own indebtedness as so much cash; but his available cash in the bank was not thereby increased a particle. It does not appear, and probably it could not have been made to appear by evidence, what precise disposition was made of any of such deposits in 1891-92. It does appear that from January 3, 1893, to June 10, 1893, there was paid out of the Hudson Savings Bank by A. J. Goss to persons lawfully entitled thereto, over and above the amount of moneys received by him or said bank from all sources, $26,668.92; and in addition to this there was, during the same period, a large reduction in the net amount of the credits of the Hudson Savings Bank in the various banks with which it carried on business in New York, Chicago, St. Paul, and New Richmond. As shown in *Nonotuck Silk Co. v. Flanders*, 87 Wis. 243, the use of trust funds by an insolvent debtor in payment of his own debts does not enrich his estate nor diminish his indebtedness, but merely creates one debt to pay another and hence furnishes no ground for preference. The views expressed are in full accord with two very recent cases in courts of very high standing on these much mooted questions. *In re Hallett & Co., Ex parte Blane* [1894], 2 Q. B. 237; *Freiberg v. Stoddard*, 161 Pa. St. 259. It appears from the record that the cash balance of the Hudson Savings Bank, April 14, 1893, was only $17.50 larger than the day before, and on the next day it was $43 smaller, and June 8, 1893, it was $7,568.49 less. From the evidence in this case it is impossible to say that the avails of any of the thirteen certificates of deposit received by A. J. Goss from Staples, April 14, 1893, on other banks were ever placed in the Hudson Savings Bank. The dealings between the Hudson Savings Bank and A. J. Goss

and the First National Bank of St. Paul between April 14, 1893, and June 9, 1893, appear to have been upwards of $50,000. During that time nine of said certificates appear to have been disposed of to that bank. It is manifest, however, that only $369.51 of the avails of those certificates remained in that bank at the time of the assignment. The trial court, by giving the appellant the benefit of the presumptions against such insolvent depositor, sanctioned in *In re Hallett's Estate*, 13 Ch. Div. 696, and *Nonotuck Silk Co. v. Flanders*, 87 Wis. 243, held that that amount belonged to the Dowie estate. Upon the same principle the trial court allowed the Dowie estate the $67.20 which remained in the Merchants' National Bank as the avails of certain of those certificates at the time of said assignment. The court also allowed said estate the unappropriated certificate of $991.67, issued by the First National Bank of Hudson, which, with the accrued interest, amounted to $1,011.49.

We perceive no error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.