Bromley vs. Cleveland, Cincinnati, Chicago & St. Louis R. Co. and others.

BROMLEY, Respondent, vs. CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY and others, interpleaded, Appellants.

*June 3 — July 3, 1899.*

*Agency:· Trust fund: Proceeds of life insurance: Presumptions.*

1. Plaintiff's husband, agent of defendants, who were jointly interested in the transportation business, mingled moneys earned by defendants in their business with his own and those of his wife, her separate property, depositing all in his own name in a bank. On this deposit he drew his checks, indiscriminately, to pay over to defendants their moneys and for individual expenditures. While there was in the bank money of defendants so mingled with his own and that of his wife, he drew checks aggregating $83.40 to pay the premium on a policy of insurance on his life, and also a check for $99.64 to procure another such policy, and died before the second premium thereon matured. Shortly before the last policy was issued, his wife entrusted to him $100 of her separate estate for the express purpose of paying premiums on the life insurance policies mentioned, but it did not appear that the $100 had been deposited in the bank. On his death he was in arrears to defendants largely in excess of the policies of insurance. Defendants, having been interpleaded in actions on the policies, claimed such policies as the proceeds of the investment of trust funds belonging to them. *Held*, that the mere diversion of the defendants' moneys in the agent's hands, the procurement of such life insurance, and the payment of the premiums on the same did not make their proceeds the fruits of the investment of such trust funds, and that defendants were not entitled thereto, without proof that the premiums on the policies were paid without their consent out of their moneys which came to their agent's hands by reason of his agency.

2. In such case, there is no presumption that, in paying by checks premiums on such insurance taken for the benefit of his wife, plaintiff's husband drew on moneys belonging to the defendants instead of the moneys belonging to his wife.

3. Inasmuch as the law presumes innocence instead of wrong, it will be presumed that all checks drawn for the benefit of the defendants were drawn on their funds, and all checks drawn for the benefit of the wife were drawn on funds belonging to her.

4. When trust money becomes so mixed up with the trustee's individual funds that it is impossible to trace and identify it as entering into some specific property, the trust ceases.

5. The right to follow and reclaim a trust fund is always based on the right of property, and is never based upon the theory of preference by reason of an unlawful conversion.

APPEAL from a judgment of the superior court of Milwaukee county: Geo. E. Sutherland, Judge. *Affirmed.*

The facts are stated in the opinion.

For the appellants there were briefs by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *F. C. Winkler.* To the proposition that the agent, who had mingled in a bank trust funds with his own, was presumed to have drawn out his own money in preference to the trust money, they cited *In re Hallett's Estate (Knatschbull v. Hallett),* 13 Ch. Div. 696; *McLeod v. Evans,* 66 Wis. 401; *Nonotuck S. Co. v. Flanders,* 87 Wis. 241; *Burnham v. Barth,* 89 Wis. 368.

For the respondent there was a brief by *Sylvester, Scheiber & Orth,* and oral argument by *Frederick Scheiber.*

CASSODAY, C. J.   It appears from the record that July 20, 1894, William W. Bromley, the then husband of the plaintiff, obtained a policy of insurance on his life, payable to the plaintiff, issued by the Provident Savings Life Assurance Society of New York, for $5,000; that December 2, 1896, William W. Bromley obtained another policy of insurance on his life, payable to the plaintiff, issued by the Northwestern Mutual Life Insurance Company, for $2,000; that March 11, 1897, William W. Bromley died; that thereupon the plaintiff, as the beneficiary named in each of such policies, brought a suit on each of such policies to collect the moneys due thereon from the respective companies issuing the same; that each of such insurance companies answered the complaint against it to the effect that the defendants herein claimed the proceeds of such policies, and asked that

they be substituted as defendants herein under sec. 2610, R. S. 1878, and paid the amount due on such policies, respectively, into court, and thereupon substitution was ordered and made; that the defendants thereupon answered the amended and supplemental complaint in each of such cases to the effect that each of the defendants had been duly incorporated; that the defendant the *Kanawha Dispatch* was a joint agency of the other defendants in the transportation business; that in the name of such agency such other corporations received and carried freight and employed agents and servants to carry on their business; that William W. Bromley had been an agent and in the employment of the defendants at Milwaukee from a period prior to July 20, 1894, to the time of his death; that, as such agent, moneys earned in the course of the transportation business of the defendants came to his hands from time to time, which it was his duty promptly to account for and transmit to the defendants, through the agency of the *Kanawha Dispatch;* that prior to the issuing of the policies to Bromley, he (Bromley) was largely in default to defendants for and on account of moneys collected for them as their agent in such transportation business, which moneys he received and failed to account for, as he was required to do by the terms of his employment, and that he diverted the moneys belonging to the defendants to purposes of his own, and that all the costs and premiums of such life insurance were paid by Bromley out of moneys of the defendants which came to his hands by reason of such agency,— the same being trust funds belonging to the defendants,— and without the consent of the defendants; that the total moneys of the defendants collected and received and not accounted for and paid over were largely in excess of such policies; that by reason of the diversion of the moneys so held in trust, and the procurement of such life insurance and the payment of all premiums on the same, the policies of insurance and their proceeds were

the fruits of the investment of such trust funds, and that the defendants were entitled thereto.

The two actions were thereupon, by stipulation and order, consolidated and tried together, and at the close of the trial the court found as matters of fact, in addition to the facts stated and undisputed, to the effect that for more than three years prior to his death William W. Bromley was in the employment of the defendants at Milwaukee as their agent, and as such agent moneys earned in the course of the transportation business of the defendants came to his hands from time to time, which it was his duty promptly to account for and transmit to the *Kanawha Dispatch*, the joint agency of the other defendants; that during the time Bromley kept an account in his individual name with the National Exchange Bank, and deposited to the credit of such account from time to time all moneys earned in the course of the transportation business of the defendants which came to his hands as such agent, together with his private funds, and commingled the same; that May 2, 1896, there was a balance of $612.41 to his credit therein; that subsequently to May 2, 1896, and up to the time of his death, there came to his hands from time to time moneys of the defendants amounting in the aggregate to $61,182.42, all of which were by Bromley deposited to his credit in said bank; that during the same time he also deposited to his credit in said bank moneys of his own amounting to $24,096.11; that between May 2, 1896, and the time of his death he did account for and transmit to the defendants in the aggregate $53,797.54 by his several checks drawn upon said bank; that Bromley specially applied the money so accounted for and transmitted by him to the defendants on account of contracts of transportation made by him as such agent prior to January 29, 1897, and the *Kanawha Dispatch*, as agent of the other defendants, did so apply the same; that during the same time he drew out for his personal use, by his several checks drawn upon

said bank, in the aggregate, $31,611.23; that at the time of
his death there remained in the bank to his credit $482.17,
which had been paid over to the administrator of the estate;
that at the time of his death Bromley had failed to account
for and transmit of the moneys of the defendants so received
by him, and deposited in said bank, $7,923.35; that the
amount of $7,923.35 not accounted for was the aggregate of
contracts of transportation made by him as such agent sub-
sequently to January 29, 1897; that July 14, 1896, and Jan-
uary 13, 1897, respectively, Bromley paid a premium on the
$5,000 policy of $41.70, making $83.40; and that Decem-
ber 2, 1896, he paid to procure the $2,000 policy $99.64; that
at each of such dates the moneys so received by him as such
agent, and credited to his account, and unaccounted for ex-
ceeded by a large amount the then balance to the credit of
his account in the bank, and that Bromley, at each of such
several times, was very largely, to wit, in excess of several
thousand dollars, in default to the defendants on account of
moneys collected for them as such agent, and which moneys
he had received and failed to account for; that in Septem-
ber, 1894, the plaintiff delivered to her husband, Bromley,
$700 of her separate estate which sum was then and there
intrusted by the plaintiff to him to save and keep for her
until a sufficient sum should be accumulated for the purchase
of a homestead in Milwaukee; that in 1895 the plaintiff de-
livered to him the further sum of $400 of her separate estate
upon the express condition that he should hold and keep the
same for her safely as and for a part of the aforesaid fund
to be used for the purchase of a homestead; that the moneys
so intrusted by the plaintiff to him were by him deposited
in said bank to the credit of his account, and commingled
with moneys of the defendants and his own; that at various
times during the latter part of the year 1896 the plaintiff de-
livered and intrusted to him other moneys, amounting in
the aggregate to about $100, of her separate estate, for the

express purpose of paying the premiums on the life insurance policies mentioned; that all the premiums of the policies involved in this action were paid by Bromley by checks drawn on his individual bank account, but that it was not established by the evidence that any of the premiums were paid out of moneys of the defendants, or either of them.

And as conclusions of law the court found, in effect, that neither of the defendants had any right, title, or interest in and to either of such life insurance policies, or any of the proceeds thereof; that the plaintiff is entitled to both policies, and the proceeds thereof, and the moneys paid thereon by the insurance companies into court pursuant to the order of interpleader made herein; that the plaintiff is entitled to have and recover of and from the interpleaded defendants the costs of this action,— and ordered judgment to be entered herein accordingly. From the judgment so entered the defendants bring this appeal.

The defendants disclaim any right to any portion of the proceeds of the $5,000 policy, except that they contend that the two premiums paid thereon, of $41.70 each, were so paid by Mr. Bromley with moneys belonging to them, and hence that they have the right to recover back the amount of those payments. They also contend that they are entitled to the policy of $2,000; and the proceeds thereof, on the ground that the $99.64 — being the only premium ever paid thereon — was so paid with money belonging to the defendants. If it were clearly established by the evidence that such were the facts, then we should have no difficulty in holding with the defendants. *Holmes v. Gilman*, 138 N. Y. 369. But the court found that it was not established by the evidence that any of the premiums were paid out of moneys belonging to the defendants. It appears that during the last year of Mr. Bromley's life he had been in the habit of holding all moneys collected by him for the defendants a couple of months, and hence generally had on hand considerable money belonging

to the defendants. As found by the trial court, such moneys were so kept by him in the bank to his credit, and were commingled, not only with large amounts of his own moneys, but with considerable money belonging to his wife; $100 of which so received from his wife during the latter part of 1896 was so received for the express purpose of paying premiums on the life insurance mentioned, although it was not found that it was deposited to his credit. That of itself was enough to pay the premium for the $2,000 policy. Whether such moneys were so commingled before making the deposit or afterwards would be immaterial. Since the insurance was for the benefit of the plaintiff, and payable to her, Mr. Bromley would be quite as likely to pay the premium thereon out of her moneys in the bank to his credit as out of the moneys of the defendants. The relations between Mr. Bromley and the defendants appear to have been of mutual confidence, and more like the relation of debtor and creditor than that of trustee and *cestui que trust.* The burden was on the defendants to prove that their money went into the policies. True, this court, following the more recent rule in England, has held that "if a person who holds money as a trustee or in a fiduciary character pays it to his account at his banker's, and mixes it with his own money, and afterwards draws out sums by checks in the ordinary manner, . . . the drawer must be taken to have drawn out his own money, in preference to the trust money." *Nonotuck S. Co. v. Flanders,* 87 Wis. 241. Following those cases, it is said in a later case: "The guiding principle is that a trustee cannot assert a title of his own to trust property. If he destroys a trust fund by dissipating it altogether, there remains nothing to be subject to the trust. When trust money becomes so mixed up with the trustee's individual funds that it is impossible to trace and identify it as entering into some specific property, the trust ceases. The court will go as far as it can in thus tracing and following trust

Bromley vs. Cleveland, Cincinnati, Chicago & St. Louis R. Co. and others.

money; but when, as a matter of fact, it cannot be traced, the equitable right of the *cestui que trust* to follow it fails. The right to so follow and reclaim a trust fund is always based upon the right of property, and is never based upon the theory of preference by reason of an unlawful conversion." *Dowie v. Humphrey*, 91 Wis. 102. See, also, *In re Hallett & Co.* [1894], 2 Q. B. Div. 237; *Freiberg v. Stoddard*, 161 Pa. St. 259; *Slater v. Oriental Mills*, 18 R. I. 353; *In re Plankinton Bank*, 87 Wis. 378; *Thuemmler v. Barth*, 89 Wis. 381; *Bent v. Barnes*, 90 Wis. 631; *Ferchen v. Arndt*, 26 Oreg. 121; *S. C.* 29 L. R. A. 664; *Bishop v. Mahoney*, 70 Minn. 238.

Assuming that Mr. Bromley received and deposited the moneys of the defendants and the plaintiff, in a fiduciary capacity, and that in drawing moneys from the bank on checks for his own private use he is presumed to have drawn out his own moneys in preference to any of such trust funds; yet it does not follow that, in paying such premiums on such insurance by checks for the benefit of his wife, he is presumed to have drawn the moneys belonging to the defendants, instead of the moneys belonging to his wife. On the contrary, and as the law presumes innocence instead of wrong, we would naturally suppose that he would pay such premiums from his wife's moneys, instead of moneys belonging to the defendants; in other words, all checks drawn for the benefit of the defendants would naturally be supposed to have been drawn on funds belonging to the defendants, and all checks drawn for the benefit of the plaintiff would naturally be supposed to have been drawn on funds belonging to the plaintiff. Of course, this is on the supposition that Mr. Bromley had on deposit the funds of both parties. The court finds that Mr. Bromley received and deposited to his credit in the bank from the plaintiff's separate estate $700 in 1894, $400 in 1895, and in addition he received from her to pay premiums on life insurance $100 in the latter

part of 1896. There is no evidence that he ever drew out any of such moneys so deposited for the plaintiff, or for her benefit, except in payment of the premiums mentioned. We cannot hold, contrary to finding of the trial court, that any of such premiums were paid out of moneys belonging to the defendants, or either of them.

*By the Court.*— The judgment of the superior court of Milwaukee county is affirmed.