## HARRIMAN NAT. BANK v. HUIET et al.

(District Court, E. D. South Carolina. December 23, 1916.)

1. FRAUDULENT CONVEYANCES ⬤⟿39—LIFE INSURANCE BY INSOLVENT.

Under equitable principles a man on becoming insolvent does not become such a trustee for his creditors of his remaining assets that any disposition thereof, though without fraud. must be for their benefit, with the result that, taking out insurance on his life for the benefit of his family, the creditors are entitled to the entire proceeds thereof; but the true rule is that he must not make donations to the prejudice of existing creditors, so that they are entitled to the proceeds only to the extent that assets were lessened by payment of premiums.

2. EXEMPTIONS ⬤⟿50(1)—LIFE INSURANCE—EXCESSIVE PREMIUMS.

Under Civ. Code S. C. 1912, § 2721, providing that a life policy for benefit of insured's wife and children shall inure to their benefit, free of claim of his creditors, provided that, if the premium paid in any one year out of his funds exceed $500, exemption from the claim of his creditors shall not apply to so much of the premium so paid as is in excess of $500, but

such excess, with interest, shall inure to the benefit of the creditors, it is the amount of the excess of premium, and not the proportional part of the insurance bought therewith, to which creditors are entitled from the proceeds.

In Equity. Suit by the Harriman National Bank against Lucy C. Huiet and others. Decree for complainant in part.

Buist & Buist, of Charleston, S. C., for plaintiff.

Huger, Wilbur & Guerard and J. P. K. Bryan, all of Charleston, S. C., for defendants.

SMITH, District Judge. The bill of complaint in this case was filed on July 1, 1916. All parties defendant have been duly served with process and have appeared and answered. The case, being at issue, came on to be heard. The testimony has been taken. Counsel for all parties interested have been heard. The facts of the case appear to be that Caleb B. Huiet, a citizen of the state of South Carolina, residing in the city of Charleston, and carrying on business therein, on the 31st day of March, 1914, made a statement in writing of his business affairs to the plaintiff, the Harriman National Bank. From the testimony put in in the cause the court is satisfied that on that day, the 31st March, 1914, Caleb B. Huiet was insolvent and largely insolvent, and that the statement made by him to the Harriman National Bank on that day for the purpose of procuring credit for loans to be made by the Harriman National Bank was wholly erroneous and untrue, and displayed a state of solvency on the part of Caleb B. Huiet which was as a fact untrue; he being at that date insolvent. Subsequent thereto, in July and August of the year 1914, Caleb B. Huiet on the basis of this statement procured loans from the complainant, that is, two different loans for $15,000 each, aggregating $30,000 which loans were at their maturity renewed, and still remain wholly unpaid, with interest from the maturity of the last renewal, viz. for $15,000 with interest from June 8, 1915, and for $15,000 with interest from May 17, 1915. It further appears from the testimony that John H. Huiet, the father of Caleb B. Huiet, was a broker of the Franklin Sugar Refining Company, one of the defendants, and carried on business as such broker for them in the city of Charleston, but that his business seems to have been largely turned over to his son, Caleb B. Huiet, who was the party actively carrying it on. In December, 1914, the defendant Franklin Sugar Refining Company seems then or thereabouts to have ascertained that Caleb B. Huiet was very largely indebted to it for the proceeds of sugar belonging to the defendant the Franklin Sugar Refining Company which he had sold, but appropriated the proceeds to his own use. It appears from the testimony that this debt aggregated some $298,000. Thereupon the Franklin Sugar Refining Company proceeded to protect itself by securing from Huiet an assignment of all the available securities of Huiet which apparently it could compel him to assign to it, including therein four policies of insurance, one in the Equitable Life Assurance Society for $50,000, one in the Atlantic Life Insurance Company for $50,000, and two in the Southeastern Life Insurance Company for $30,000 each. These two in the South-

eastern Life Insurance Company were each payable on the death of the said Caleb B. Huiet to Lucy C. Huiet, his wife, if living, otherwise to Katherine R. Huiet, his daughter, if living, otherwise to the executors, administrators, and assigns of the insured. From the testimony it appears that the Franklin Sugar Refining Company concluded that it did not care to continue to pay the future accruing premiums upon the two policies in the Southeastern Life Insurance Company, and thereafter, on the 24th of December, 1915, it executed an assignment or reassignment upon each of them to Caleb B. Huiet, the insured, and the beneficiaries originally named in the policies. The court finds as a conclusion of law upon the construction of this assignment that the effect of the assignment was to return the policies back to the insured or the beneficiaries thereunder in like manner as if no assignment to the Franklin Sugar Refining Company had ever been made. Thereafter, on the 8th day of April, 1916, Caleb B. Huiet departed this life, and it is found as a conclusion of fact that at the date of his death on the 8th day of April, 1916, and at all periods between the 31st day of March, 1914, and the date of his death, the said Caleb B. Huiet was insolvent. At the time of his death there were insurance policies on his life additional to the ones mentioned as having been assigned to the Franklin Sugar Refining Company, namely, two in the Equitable Life Assurance Society for $10,000 each, and one in the New York Life Insurance Company for $25,000, all of these three insurance policies being payable to Lucy C. Huiet, the wife of Caleb B. Huiet, and another policy in the New York Life Insurance Company for $10,000, which was payable to Katherine R. Huiet, his daughter. This bill of complaint has been filed to have the proceeds of these insurance policies subjected to the payment of the creditors of Caleb B. Huiet, he having died insolvent and largely indebted, and the bill of complaint alleges that there was a fraudulent conspiracy between the Franklin Sugar Refining Company and Caleb B. Huiet and Lucy C. Huiet whereby the reassignment of the two policies reassigned by the Franklin Sugar Refining Company was procured for the purpose of enabling the defendant Lucy C. Huiet to receive the proceeds of those policies under color of this reassignment and in fraud of the creditors of Caleb B. Huiet. As to the other insurance policies the bill alleges, in effect, that Caleb B. Huiet being at the time insolvent, the procurement of those policies by the payment of the premiums thereon out of the funds of an insolvent debtor was an act in fraud of his creditors, and that the proceeds of the policies should be subjected to their claims. As to the charges against the Franklin Sugar Refining Company under the testimony the court finds that they are wholly unsustained. The Franklin Sugar Refining Company is shown to have been a large creditor of Caleb B. Huiet and a creditor standing in the position of a creditor for proceeds of its own property diverted by its broker or representative or one acting as such to his own benefit. It was entirely proper for the Franklin Sugar Refining Company to protect itself by securing its debt in any way it legally could. It is not shown to have been aware of the statement made by Caleb B. Huiet to the complainant, the Harriman National Bank, nor even to have been aware that the Harriman National Bank at the time of the assignment

of these securities to the Franklin Sugar Refining Company was a creditor of Caleb B. Huiet. There are no evidences of fraud whatsoever in the matter, and there is no rule under proceedings in equity of the character of this bill of complaint which would prevent the Franklin Sugar Refining Company from receiving the proceeds of such securities as it could procure from this debtor for the securing of its debt. Nor is there any rule of law which would prevent it from reassigning these policies which it did not care to assume the burden of continuing. If anything had been shown to warrant the inference that the Franklin Sugar Refining Company was not a bona fide creditor of Caleb B. Huiet, or had attempted in co-operation with Caleb B. Huiet to divert the estate really of Caleb B. Huiet from his other lawful creditors, for the ulterior purpose of donating it to his wife, the case would be otherwise, but from the testimony the Franklin Sugar Refining Company appears to be in the position of a bona fide creditor of Caleb B. Huiet, simply attempting to secure its own debt, and the reassignments made by it upon these policies seem to have been entirely bona fide and made for the reason that it did not care to undertake the continuing burden of paying the future accruing premiums upon these policies for the uncertain duration of the life of Caleb B. Huiet.

It is found, therefore, that all charges of fraud against the Franklin Sugar Refining Company and the defendant Lucy C. Huiet on this point are unsustained, and the bill of complaint herein as against the Franklin Sugar Refining Company is ordered, adjudged and decreed to be dismissed, with costs to the defendant the Franklin Sugar Refining Company.

With regard to the defendant Katherine R. Huiet it is admitted that the premiums upon the policy in the New York Life Insurance Company, which is payable to her, were paid by her grandfather, John H. Huiet, and were not paid by the deceased, Caleb B. Huiet. It is therefore ordered, adjudged, and decreed that the defendant Katherine R. Huiet is shown to be lawfully entitled to the insurance policy referred to payable to her upon the death of her father, Caleb B. Huiet, and no evidence of fraud or intended fraud on her part has been introduced, and the bill of complaint herein is dismissed as to her with costs to her.

This leaves the question of the right of the defendant Lucy C. Huiet to receive the proceeds of the five policies of insurance, the proceeds of which she claims, that is to say, the three policies before referred to payable to her direct, and the two policies payable to her if living at the death of Caleb B. Huiet and which were reassigned by the Franklin Sugar Refining Company. Whenever a person dies heavily indebted (and more strongly so when he dies totally insolvent, with practically no assets to apply to the payment of his creditors, and many of these creditors standing in the position of creditors who have been misled and deceived by the statements of the deceased in procuring loans from them), the spectacle presented of the creditors going unpaid and the wife and children of the deceased being amply provided for from the proceeds of life insurance policies procured and apparently paid for by the deceased out of funds procured by him from these very creditors is apt at first sight to shock equitable sensibilities,

but an analysis of the facts and the inspection of the circumstances may show that, although there might arise under fortuitous circumstances the case where the man died in time to realize this for his family, yet, as a general rule, it would be wholly unsafe to presume that a man was willing to die in order that those dependent on him might be enriched by his death by this means.

[1] To hold that the moment a man became insolvent he became such a trustee for his creditors of his remaining assets that all dispositions of his funds, whether fraudulent or not, must be for their benefit, would be to upset all methods of business. It would be going too far to hold that such was the result, and that a man who once became insolvent must be presumed after that occurrence to make all his dealings and transactions simply as the agent of the creditors for whom he was trustee. The true rule in cases such as the present would be to apply the general doctrine that a man must not make donations without consideration out of his assets to the prejudice of creditors for value at the time existing. If that be the rule, the question would be: To what extent was any donation made in the procuring of policies by payments of money where no fraud is shown to exist as in the case of a fraudulent transfer of property? And the logical answer to that would seem to be that the extent of the donation was the extent to which the assets were actually diminished or lessened by the application of the funds to the purchase of the insurance whereby the donation was made. In the view the court takes of the matter, no court of any controlling authority decreeing equitable relief upon equitable principles has ever gone farther.

[2] Independent of these principles, however, the complainants rely upon the statute of the state of South Carolina embodied in the Code of Laws of South Carolina 1912 as section 2721, which provides that a policy of insurance taken out by a person for the benefit of any married woman or of herself and her children, or of herself and the children of her husband, inured to the use and benefit of the persons for whose use and benefit it is expressly taken out, with a proviso, however, that if the premiums paid in any one year out of the property or funds of the insured should exceed the sum of $500, exemption from the claims of the creditors of the insured shall not apply to so much of said premiums so paid as shall be in excess of $500, but such excess, with the interest thereon, shall inure to the benefit of the creditors if the same be necessary for their payment. This statute of the state of South Carolina, in the opinion of the court, is a statute in the same category as statutes in the nature of homestead statutes, providing for a reservation or protection for the support either of the individual or those dependent on him, so that they may not at his death or in case of his insolvency through business misfortune be left as charges upon the community, but that any married man shall be at liberty to make provision for those who are dependent on him by the procurement of insurance policies upon his life for their benefit, provided that he shall not to the prejudice of his creditors in any one year pay more than $500 out of his funds for that purpose, and that any excess paid by him, with interest thereon, shall inure to the benefit of his creditors. It might be more equitable to suppose that the statute should

HARRIMAN NAT. BANK V. HUIET

direct what should inure to the creditors should not be limited to the excess over the $500, but should extend to the proceeds of the policies, so as to include so much of the policies as would be purchased for the amount paid over the sum of $500. The clear reading, however, of the statute is to the contrary, and the statute appears to be within the power of the state to pass, certainly as against all subsequent creditors, and all creditors proven in this case are creditors subsequent to the date of the statute. The creditors of Caleb B. Huiet under this construction of the statute are not entitled to the proceeds of the life insurance policies in question beyond an amount sufficient to pay back to his estate any excess over the sum of $500 paid in each year, with interest thereon from the time of payment. The court finds as a conclusion of fact that the only individual creditor with a debt proved as existing at the time of the payment of the premiums proven in this case is the debt of the Harriman National Bank, the complainant. It has been proved by his books and the admissions of Caleb B. Huiet himself that he owed creditors to an amount sufficient to render him insolvent as hereinbefore adjudged, but no other particular debt has been proven except the debt of the Franklin Sugar Refining Company.

It further appears from the testimony in this case that the total amount of premiums in the life insurance policies in question, the proceeds of which are claimed by the defendant, Lucy C. Huiet, and which premiums were paid subsequent to the accrual of the debt of the Harriman National Bank, the complainant herein, amount to the sum of $2,287.16 paid in the year 1914; the premiums which became due in the year 1915 appearing to have been settled either by loans which were deducted out of the proceeds of the life insurance policies before payment or by Mrs. Lucy C. Huiet herself. It is therefore ordered, adjudged, and decreed that the creditors of Caleb B. Huiet are entitled to receive out of the proceeds of these policies claimed by Lucy C. Huiet the sum of $2,287.16, less $500, leaving a balance of $1,787.16, with interest to be calculated from the average date of payment of the different premiums in the year 1914. A claim has been made on behalf of Mrs. Lucy C. Huiet that she, being a creditor of Caleb B. Huiet, is entitled to have these premiums paid in the year 1914 charged to her as a set-off against the balance of the indebtedness due her at that time. In the first place, there has been no sufficient proof of the debt of Lucy C. Huiet at that time to rank as an individual creditor. The books of Caleb B. Huiet are evidence against him and as against any one claiming under him to establish his insolvency, but his books would not be evidence in his own behalf, nor in behalf of any one in the same interest with him, although they might be evidence upon proper proceedings to establish the debt of Mrs. Lucy C. Huiet by the admission of that debt; but the evidence of the mere existing balance due her on his books as shown as part of the general aggregate of debt under the shape of the proceedings in this case is not a sufficient establishment of her claim for her to rank as an individual creditor. Furthermore, it appears to the court, in view of the statute, as a statute intended for the benefit of all existing creditors, she should not be entitled to the set-off claimed unless shown to be a creditor existing at the time.

It is further ordered, adjudged, and decreed that out of the proceeds of the two policies in the Southeastern Life Insurance Company now in the People's National Bank there be first deducted and paid into this court the amount of the full premiums and interest hereinbefore decreed to be paid thereout to the creditors of Caleb B. Huiet and the costs of these proceedings, and that the balance be paid to the defendant Lucy C. Huiet. Inasmuch as the provisions of the statute appear to be for the benefit of all creditors, and the very bill of complaint in this case is brought on behalf of all creditors, it is necessary to call in every creditor who may be entitled to share in the fund.

It is therefore ordered that it be referred to D. B. Billiland, Esq., one of the standing masters of this court, to advertise for all creditors of Caleb B. Huiet to come in and prove their claims before him on or before a day named not more than six weeks after the date of this decree, and that he make such advertisement once a week for three successive weeks in any paper of general circulation in the city and county of Charleston.

It is further ordered that nothing herein contained shall be construed to prejudice any right the defendant Lucy C. Huiet may have to come in and establish her right to her pro rata payment as a creditor of Caleb B. Huiet.

It is further ordered that the said standing master do further send by mail a printed notice to each creditor appearing upon the books of Caleb B. Huiet produced in this case by mailing the same to such creditor if his address can be ascertained from the said books to come in and prove his debt.