## VORLANDER et al. v. KEYES.

(Circuit Court of Appeals, Eighth Circuit. September 8, 1924.)

No. 6630.

**1. Trusts ⬅102(1)—Fiduciary, fraudulently using fiduciary funds for own benefit, takes title as trustee ex maleficio.**

One acting in fiduciary capacity, who wrongfully uses fiduciary funds to purchase property, including policies of life insurance, for his own benefit, and puts it in his own name, takes the title and interest in it as a trustee ex maleficio, and equitable ownership of funds and fruits thereof, as long as they can be traced, remain in the cestui que trust.

**2. Trusts ⬅354—Fruits of funds misappropriated by trustee ex maleficio become property of cestui que trust unless in hands of bona fide purchaser.**

Not only the property which the trustee acquires with the misappropriated funds, but all its fruits, in every form, its increase, its income, or other property acquired by the trustee by the exchange or use of it in any way, become, at the option of the cestui que trust, his property, unless it has passed into the hands of a bona fide purchaser.

**3. Trusts ⬅354 — Trustee ex maleficio not entitled to benefit from use of trust funds.**

In no event is a trustee ex maleficio entitled in equity to any benefit to himself from the use of the trust funds.

**4. Trusts ⬅357(3)—One cannot hold property purchased with misappropriated funds as against owner, where no consideration has been paid therefor.**

One who pays no consideration for property purchased from a trustee ex maleficio, though innocent of the fraud, does not hold property against owner, being a particeps criminis.

**5. Insurance ⬅592—Bank's receiver held entitled to portion of proceeds of life policy, where insured paid premiums in part from misappropriated bank funds.**

Where bank president paid portion of premiums on policy out of bank's funds embezzled by him, bank's receiver was entitled, as against beneficiaries, to portion of proceeds in proportion to portion of premium so paid, since president was trustee ex maleficio of bank funds.

Appeal from the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Action by Paul C. Keyes against Emilie Vorlander and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Raymond Ziesmer, of Duluth, Minn. (H. B. Fryberger, of Duluth, Minn., on the brief), for appellants.

A. Ueland, of Minneapolis, Minn., and J. N. Johnson, of Canby, Minn., for appellee.

Before SANBORN and LEWIS, Circuit Judges, and KENNEDY, District Judge.

SANBORN, Circuit Judge. By proper proceedings counsel present in this case a single question for decision:

On March 5, 1919, Christian Vorlander, the president of the First National Bank of Eureka, S. D., who was then heavily indebted to that bank, bought from the Equitable Life Assurance Society of the United States five policies of insurance on his life, one for $8,000, in which his wife was the beneficiary, and four for $5,000, in each of which one of his children was the beneficiary. One-half of the initial premium in each of these policies he paid with his own property, and he paid the other half of each premium with the funds of the bank, which he secretly misappropriated to that purpose. The second year's premium on each of these policies was the same amount as that of the first year, and he paid the second year's premium on each in January, 1920, with the funds of the bank, which he secretly misappropriated to that purpose. He died on August 11, 1920. The result was that one-fourth of the premiums, which resulted in the proceeds of these policies, was paid by Mr. Vorlander with his own property, and three-fourths thereof he paid with the funds of the bank, which he misappropriated to those payments. The bank went into the hands of a receiver, and the litigation between him and the beneficiaries of these policies in the court below resulted in a decision and decrees of that court to the effect that the receiver was entitled to three-fourths and the beneficiaries to one-fourth, respectively, of the proceeds of the policies. The beneficiaries appeal.

The contention of their counsel is that the receiver was entitled to a lien on the proceeds of these policies for the amount of the funds of the bank misappropriated, with interest thereon to the date of its repayment, and to nothing more. The theory of the court below undoubtedly was that Vorlander, by the misappropriation of the bank's funds, made himself a trustee ex maleficio thereof and of all the fruits therefrom as against himself and the beneficiaries under the policies, who were not bona fide purchasers and had never expended or lost anything of value on account thereof.

Counsel for the beneficiaries cite in support of their position:

Holmes v. Davenport (Sup.) 18 N. Y. Supp. 56, 63, 64, where the initial premiums on some of the policies were paid by the beneficiary, the wife of the insured, and some of the later premiums were paid by her husband with misappropriated funds, and the court held that the wife was entitled to the proceeds subject to a lien for the amount of the misappropriated funds and interest only.

Hubbard v. Stapp, 32 Ill. App. 542, 546, 547; but the issue in that case was whether or not before the death of the insured he made an express contract to assign the policies to the bank, and the court declared that the bill did not proceed on the theory of a trust (see page 546) and it ordered a new trial with directions that, "if the evidence shows that the money of the bank paid the first premiums * * * then the court should allow such amount, with interest, to the bank, with like amounts since paid for premiums, if any, with interest," and pay the balance to the administrator for the beneficiaries named in the policies.

Bank of Stewart County v. Mardre, Administratrix, et al., 142 Ga. 110, 82 S. E. 519. In that case the adjudication was that the transaction evidenced no trust, but the ordinary relation of debtor and creditor between the assured, who paid the premiums, and the bank, upon which he drew the check; and all that was said on the question here at issue was: "While it may be true that where a holder of a policy of insurance payable, not to the estate of the insured, but to a named beneficiary, uses trust funds in his hands in payment of the premiums on the insurance, * * * the proceeds of the policy thus paid to the beneficiary will be impressed with a trust * * * to an amount equal to the premiums paid," the evidence disclosed no such trust. The opinion in that case leaves no doubt that the court never considered or decided the question whether, in case there had been a trust, the measure of the recovery of the cestui que trust would be a part of or all the proceeds of the insurance, or the amount paid on account of the premiums.

Bromley v. Cleveland, C., C. & St. L. Ry. Co., 103 Wis. 562, 79 N. W. 741, 743; but the finding of fact in that case was that all the premiums were paid out of the moneys of the beneficiary in the policy, the wife of the assured, and on that ground alone the alleged cestui que trust failed. The question at issue in the case at hand was not referred to in the opinion.

Counsel also cite another class of cases, those in which creditors of an insured, who, while insolvent, had paid premiums on a policy to his wife as beneficiary, sought to recover the proceeds of such a policy after his death and to apply them to the payment of his debts to these creditors, and the

courts have limited the recoveries of the creditors to liens on such proceeds to the amount owed the creditors by the insolvent, such as:

Harriman Nat. Bank v. Huiet (D. C.) 244 Fed. 216, 217, 220, 221, and Central Bank of Washington v. Hume, 128 U. S. 195, 9 Sup. Ct. 41, 32 L. Ed. 370. These cases, however, are not in point, because the insured therein did not misappropriate the funds of his creditors to pay the premiums and hence was not chargeable with them or their fruits as a trustee ex maleficio. Though insolvent, the funds he used to pay the premiums were not the property of his creditors; they were his funds, and the recoveries in those cases rest, not upon the trust theory, but upon the prohibited transfer of the property of the insolvent debtor to hinder, delay, and defraud his creditors. Holmes v. Gilman, 138 N. Y. 369, 383, 384, 34 N. E. 205, 20 L. R. A. 566, 34 Am. St. Rep. 463.

The foregoing are all the authorities upon which counsel for the beneficiaries rely and we turn to those cited for the receiver of the bank.

Holmes v. Gilman, 138 N. Y. 369, 372, 378, 379, 383, 385, 34 N. E. 205, 20 L. R. A. 566, 34 Am. St. Rep. 463. In that case Gilman, a partner in the firm of J. H. Labaree & Co., while indebted to that firm secretly misappropriated its funds to the payment of all the premiums, aggregating more than $4,000, on three policies of insurance for about $15,000 on his life for the benefit of his wife. After his death the insurance companies paid the amounts owing on the policies to the Union Trust Company, and in litigation between Mr. Holmes, one of the partners to whom the other surviving partners had assigned their rights and interests, and Mrs. Gilman, the referee awarded all the moneys collected on the policies to Mr. Holmes. The court reversed that decision and, after intermediate decisions and proceedings, the Court of Appeals of New York, after an exhaustive consideration of the question, rendered a judgment of affirmance of the decision of the referee.

Shaler v. Trowbridge, 28 N. J. Eq. 595, 596, 598, 599, 600, 602. In that case a partner, heavily indebted to his partnership, secretly paid out of partnership funds all the premiums on policies of insurance upon his life, first issued to himself and subsequently made payable to his wife, who, after his death, collected the proceeds of some of them. The three surviving partners ex-

hibited a bill in equity to charge the widow as a trustee ex maleficio of the funds collected upon the policies, the fruits of the premiums paid with their funds, and the court sustained the bill and decreed all the proceeds of the policies to the surviving partners.

In Dayton v. H. B. Claflin Co., 19 App. Div. 120, 45 N. Y. Supp. 1005, 1006, the initial premiums and all the other premiums in policies on the life of the husband for the benefit of the wife were paid by the husband with misappropriated funds of his employer, while one of the later premiums, amounting to $76, was paid by the wife. The court expressed the opinion that the proceeds of the policies should be divided between the employer and the wife in proportion to the amounts paid on all the premiums by their respective funds.

The opinions of the courts in the authorities we have reviewed and in other cases have been carefully read and considered. They have failed, however, to convince that the conclusion and decree below were inequitable or erroneous. On the other hand, it proves to be sustained by these indisputable principles of equity.

[1] One who, acting in a fiduciary capacity, secretly and wrongfully, and therefore fraudulently, uses fiduciary funds to purchase real estate or personal property, including policies of life insurance, for his own benefit and puts it in his own name, takes the title and interest in it as a trustee ex maleficio for the owner of the misappropriated funds he thus uses, the cestui que trust. The equitable ownership and title of the misappropriated funds and the fruits thereof remain in the cestui que trust as long as they can be traced, and the trustee holds nothing but the naked title for the exclusive benefit of the cestui que trust.

[2] In equity, not only the property which the trustee acquires with the misappropriated funds, but all its fruits, in every form, its increase, its income, other property acquired by the trustee by the exchange or use of it in any way, become, at the option of the cestui que trust, his property, unless it has passed into the hands of a bona fide purchaser for value without notice of the misappropriation.

[3] In no event is the trustee ex maleficio entitled in equity to any benefit to himself from the use of the trust funds. Public policy forbids that one who has corruptly thrust himself into the position of a trustee shall profit by his fraud.

[4] Nor may another, in this case the wife,

now the widow of the trustee ex maleficio, though herself innocent of the fraud, who has paid no consideration for the property purchased with the misappropriated funds or for their fruits, hold any of them against the cestui que trust, the owner thereof. A third person, unless he or she has in good faith acquired for value without notice a subsequent interest, seeking any benefit resulting from the misappropriation becomes a particeps criminis however innocent of the fraud in the beginning. Story's Equity Jurisprudence (14th Ed.) §§ 1666, 1667, 1668, 1669, 1670; Perry on Trusts, §§ 127, 166.

[5] Without a disregard of these fundamental rules of equity jurisprudence, there is no logical or rational way of escape from the conclusion of the court below that, when the insured paid with the funds of the bank one-half of the initial premiums of these policies, he became a trustee ex maleficio for the exclusive benefit of the bank of one-half of the title and interest in the insurance policies. If he had paid three-fourths of those initial premiums with the funds of the bank, he would have held three-fourths of the title and interest in the policies in trust for the bank. In this case, before the insured died, he paid with the funds of the bank the premiums on the policies for the second year, so that from the time of the payment of those premiums, and at the time of the death of the insured, one-fourth of the amount invested in the policies had been paid by the insured with his own property, and three-fourths thereof with the misappropriated funds of the bank, and the court divided the fruits of those investments, the proceeds of the policies, between the widow and the receiver of the bank in that proportion.

That division is just, equitable, and right, and the decree below is affirmed.