## WENDELL P. COLTON CO. v. NEW YORK & CUBA MAIL S. S. CO. et al.

Circuit Court of Appeals, Second Circuit.
July 30, 1928.

No. 299.

1. Judgment ⟂⟂729—Decree directing disposition of collected maritime lien insurance, but reserving for further adjudication rights of creditors thereto, held not final adjudication of maritime lien claimants' rights thereto.

Decree ordering steamship company's receiver to make certain payments out of maritime lien insurance collected by him, and to deposit balance thereof in special deposit in name of steamship company, to be paid only pursuant to orders of the court, to be thereafter entered, and reserving rights of creditors to the fund and final disposition thereof for further consideration and adjudication by the court, held not final adjudication of maritime lien claimants' rights thereto, so as to be res judicata.

2. Insurance ⟂⟂475—Insurance "on liens p. p. i. and f. i. a." held valued insurance, concluding insurers as to damages payable on loss of vessel.

Maritime insurance "on liens p. p. i. (policy proof of interest) and f. i. a. (full interest admitted)" was valued insurance, which concluded insurers as to the damages payable on loss of vessel.

3. Receivers ⟂⟂104—Receiver's disbursement of estate's funds in disobedience of orders does not prevent estate claiming interests which it would otherwise have had.

Receiver's disbursement of funds of estate in disobedience of his orders does not prevent estate from claiming the same interests in equity which it would have had if he had followed directions of the court.

4. Trusts ⟂⟂354—Cestuis may recover proceeds of insurance wrongfully purchased by trustee with trust funds.

Where a trustee wrongfully uses trust funds to pay an insurance premium, the proceeds of the insurance so purchased may be recovered by his cestuis.

5. Insurance ⟂⟂582—Excess of maritime lien insurance over liens taken out by receiver in violation of order held not to inure to benefit of lien claimants.

Where steamship company's receiver, in order not to violate hull insurance policies on vessels, took out valued policies for full amount of maritime lien claims against vessels for benefit of lien claimants, though order appointing him directed him to keep vessels insured in customary manner, where maritime lien claims are asserted against them, held, that receiver's disobedience of court's order did not inure to benefit of lien claimants, so as to entitle them to proceeds of insurance in excess of their actual liens, but such excess belongs to estate, regardless of receiver's intent, not expressed to underwriters or to lien claimants.

27 F.(2d)—42

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Wendell P. Colton Company against the New York & Cuba Mail Steamship Company. From an order dismissing the petition of Young & Glenn, Inc., and others, praying that the receiver of the New York & Cuba Mail Steamship Company (hereinafter referred to as the Ward Line) be directed to distribute to petitioners certain insurance money in his hands, petitioners appeal. Affirmed.

Bigham, Englar & Jones, of New York City (Oscar R. Houston, of New York City, of counsel), for petitioners.

Burlingham, Veeder, Masten & Fearey, of New York City (Everett Masten, of New York City, of counsel), for Ward Line, appellees.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge. The petitioners were the owners of certain cargo that was lost from a lighter while being loaded thereon from the steamship Esperanza, owned by the Ward Line. Subsequent to this disaster an equity receiver was appointed for the Ward Line, and thereafter the petitioners filed in the receivership proceedings claims for cargo damage, asserting maritime liens against the Esperanza. The order of February 1, 1924, which appointed the permanent receiver and directed him to continue operation of the Ward Line vessels, contained the following provision with reference to insurance for maritime lien claimants:

"So long as the receiver continues to hold any vessel against which any person shall have filed a claim asserting a maritime lien thereon, the receiver shall keep such vessel insured in the customary manner. In case of loss, such claimant shall have the same rights and priorities against the insurance money collected by the receiver, which he would otherwise have had against the vessel, if any."

The petition alleges that the receiver did not comply literally with this order with respect to the steamship Esperanza, because she was already insured under hull policies containing a "disbursements warranty" clause, which would have been violated, had additional insurance been placed upon the vessel. Instead, the receiver took out insurance from time to time for the face amount of the lien claims as filed; the policies insuring "Francis G. Caffey, receiver New York & Cuba Mail Steamship Company, for account of

themselves. Loss, if any, payable to Francis G. Caffey, receiver, * * * on liens p. p. i. (policy proof of interest) and f. i. a. (full interest admitted)." The total amount of such lien insurance was $105,500, the aggregate of lien claims then filed being $105,-471.72. Subsequently additional lien claims were filed, bringing the aggregate of asserted liens up to $112,830.70, according to the answer, and up to $116,000, according to appellee's brief. The Esperanza was lost through a peril of the sea in November, 1924, and the receiver collected upon the hull policies and also upon the lien policies here involved, representing to the underwriters that the lien insurance was solely for lien creditors.

The petitioners claim that they are the sole beneficiaries of the lien insurance, and are entitled to have the fund distributed to them in proportion to the face amount of their filed claims, without proof of the validity and amount of their asserted liens. The answer to their petition admits their rights to the extent of their liens, but denies that petitioners have valid liens to the extent of their asserted claims, and contends that the receiver is entitled to any surplus of insurance money in excess of proved liens. A hearing was had upon the petition and answer, apparently of the nature of a hearing on a motion for judgment upon the pleadings, and an order was entered dismissing the petition.
[1] It is urged by the receiver that the decree of August 14, 1925, is res adjudicata of the present dispute. Paragraph 21 of that decree ordered the receiver to make certain payments out of the collected lien insurance, and to deposit the balance of the fund "as a special deposit in the name of the Ward Line, to be paid only pursuant to order or orders of this court to be entered hereafter in this cause." It further provided that the rights of creditors to said fund and the final disposition thereof is reserved for further consideration and adjudication by the court. In view of this reservation, it seems to us too clear for argument that the decree was not a final adjudication of the appellants' rights.
[2] The insurance "on liens p. p. i. and f. i. a." was valued insurance, which concluded the insurers as to the damages payable upon loss of the vessel. See Booth-American Shipping Co. v. Importers', etc., Ins. Co., 9 F.(2d) 304 (C. C. A. 2); New York & Cuba Mail S. S. Co. v. Royal Exchange Assur., 154 F. 315 (C. C. A. 2). The receiver has collected about $85,000 (one of the policies representing the balance of the lien insurance not having been yet paid), and this sum constitutes the fund in dispute. It is contended, on the one hand, that the policies taken out by the receiver were intended by him for the sole benefit of the lien claimants, as indicated by the receiver's reports and by letters of his attorneys and his brokers, and, on the other hand, that his intent went no further than to protect actual lienors, not merely lien claimants, and as to the rest he insured his own interest. The receiver's intent, if not expressed to the underwriters or to the lien claimants, is altogether irrelevant. The letter of March 21, 1924, from Mather & Co. (the receiver's broker) to the underwriters, states:

"We beg to confirm that we have arranged total loss insurance for account of lienors. * * * We understand that this does not conflict in any way with the warranties as contained in your hull policies on these vessels. * * *"

The policies had to insure the lienors' interests, or they would have violated the hull policies, and the underwriters would have been defrauded when the hull insurance was collected; they are issued "on liens," and, of course, the receiver had no insurable interest in the liens as such. The broker's letter we regard as a request for insurance on the lienors' interests only. What the unexpressed intent of the receiver may have been is immaterial. Hence we have a situation where the receiver, acting in effect as agent for the lien claimants, took out a form of policy which they could lawfully have taken on their interest, but they alone, and only if solely interested in the policies. The petitioners would thus make a prima facie showing of right to the lien insurance fund in the hands of the receiver, if nothing further appeared.
[3, 4] But it is conceded in the petition that the receiver disobeyed his instructions in taking valued policies for the sole benefit of the lien claimants; that, had he done what the court directed, the lien claimants would have been insured only to the extent of their actual liens. The question, therefore, arises whether his conceded disobedience of his orders prevents the beneficiaries of the policies from enjoying this windfall. The receiver's disbursement of the funds of the estate in disobedience of his orders does not prevent the estate from claiming the same interests in equity which it would have had if he had followed the directions of the court. Where a trustee wrongfully uses trust funds to pay an insurance premium, the proceeds of the insurance so purchased may be recovered by his cestuis. Shaler v. Trowbridge, 28 N. J. Eq. 595; Vorlander v. Keyes, 1 F.(2d) 67

(C. C. A. 8); Holmes v. Gilman, 138 N. Y. 369, 34 N. E. 205, 20 L. R. A. 566, 34 Am. St. Rep. 463; Truelsch v. Northwestern Mut. Life Ins. Co., 186 Wis. 239, 202 N. W. 352, 38 A. L. R. 914; Mass. Bonding, etc., Co. v. Josselyn, 224 Mich. 159, 194 N. W. 548.

[5] We think this principle is applicable to a receiver who spends funds without authority. He should not be able to affect the rights of his principal—i. e., the estate—by ignoring his instructions. If he was not able to get the insurance required, he should have gone back to the court for further instructions. Not having done so, but concededly having acted without authority, the insurance proceeds he collected he must hold on the same terms as he would have held the proceeds of authorized policies. He cannot hold them free of the liens which it was agreed they should enjoy in exchange for the receiver's retention of possession of the vessel. Just as the agreement would expressly have bound the policies if they had conformed to the instructions, so, if the estate elects in equity to pursue the policies actually taken out, in equity it is subject to whatever liens would have covered proper policies. But the lienors cannot enjoy a better position than they would if the receiver had followed the court's order. They were meant only to have protection to the extent of their actual liens, and the receiver's mistake cannot give them more; the policies having been created by the disbursement of the estate's funds.

The result below seems to us correct, and the decree is affirmed. Of course, this proceeding does not affect such claims as the lienors may prove against the funds.