## CABAUD v. FEDERAL INS. CO.

District Court, S. D. New York. November 27, 1928.

Burlingham, Veeder, Masten & Fearey, of New York City, for libelant.

Bigham, Englar & Jones and Oscar R. Houston, all of New York City, for respondent.

GODDARD, District Judge. In admiralty. This is a suit in admiralty by Henry E. Cabaud, as substituted receiver of the New York & Cuba Mail Steamship Company, to recover from the Federal Insurance Company $21,100, insurance on the steamship Esperanza, which became a total loss owing to the perils of the sea on November 28, 1924.

This case was tried some months ago, but decision was deferred pending appeal in the Circuit Court of this circuit of Wendell P. Colton Co. v. New York & Cuba Mail Steamship Co., 27 F.(2d) 657.

When Mr. Caffey, who preceded Mr. Cabaud, as receiver of the New York & Cuba Mail Steamship Company, was appointed, he was instructed by the court to operate the Ward Line fleet of steamships. Maritime lien claimants objected that the operation of the fleet would jeopardize their liens. To meet this situation, Judge Knox issued the following order: "So long as the receiver shall hold any vessel against which any person shall have filed a claim asserting a maritime lien thereon the receiver shall keep such vessel insured in the customary manner. In case of loss such claimant shall have the same rights and priorities against the insurance money collected by the receiver which he would otherwise have had against the vessel, if any."

The preliminary application submitted by the receiver's representative to the underwriters recited that "insurance is wanted by Francis G. Caffey, Receiver, New York and Cuba Mail Steamship Company, for account of lienors." The receiver deemed it advisable, when placing the insurance, that it should be for the face amount of the lien claims as filed, as otherwise the insurance might prove insufficient; also, that the insurance should be "valued" at the sum insured (a form of insurance which dispenses with proof of the loss), inasmuch as the insurance on any vessel would be payable for the loss at the time when the lien claims would be still unadjudicated, so that the delays in the collection of the insurance in the event of a loss would not be occasioned by requiring strict proof as to the amount of each lien. This insurance, which hereinafter will be referred to as "lien insurance," was placed with seven different underwriters, each taking a percentage of interest, respondent's interest being 20 per cent., and each policy covered the underwriter's interest in the total amount insured on each vessel, as per list attached. The total amount of lien insurance on the steamship Esperanza was $105,500, of which respondent's 20 per cent. amounted to $21,100, the amount now sued for. The respondent's lien insurance policy consisted of a rider attached to an ordinary hull policy form, and the hull policy form, so far as material, is as follows:

"Francis G. Caffey, Receiver New York and Cuba Mail Steamship Company, for account of themselves, loss, if any, payable to Francis G. Caffey, Receiver, or order, does make insurance and cause themselves to be insured, lost or not lost, to the amount of $180,000, upon the liens P P I, F I A, as above," etc.

"The said liens P P I, F I A, or so much as concerns the assured, by agreement between the assured and assurers in this policy, are and shall be valued at as follows."

The provisions, so far as material, of the rider, were as follows: "For account of themselves, loss, if any, payable to Francis G. Caffey, Receiver, do make insurance and cause to be insured Francis G. Caffey, Receiver New York and Cuba Mail Steamship Company, per steamers, tugs, and lighters as per list attached. One year from March 20, 1924, noon, Washington time, for $180,000. on liens P P I, F I A. Agwi trade limits as per hull policies. Being a 20% interest in the total sum insured on each vessel on this interest as stated in the schedules attached hereto. * * * Warranted free from all average and salvage charges; being against the risk of the total and/or constructive total loss of vessel only. To pay a total loss in the event of a total or constructive total loss being paid on hull policies."

On a perforated slip at bottom was the following: "This slip is not to be attached to the policy, and the assured has permission to detach it from the clauses above should the policy have to be produced in a court of law. Full interest admitted, the policy being deemed sufficient proof of interest. This insurance is without benefit of salvage."

The letters "P P I" and "F I A," as appears from the clause at the end of the rider, stand for "Policy proof of interest" and "Full interest admitted," respectively.

The lien underwriters, other than the respondent, paid their lien insurance in full, and the proceeds, amounting to $84,400, have been set apart by the court in an equity suit pending determination of the interest of the

lien claims therein. However, this respondent was interested as an underwriter in the lien claims to the amount of some $50,000, and it has declined to pay this lien insurance; its lien claims not having been allowed as yet. It also appears that $116,401.05 face amount of lien claims have been filed, and that to date $39,401.05 thereof have been adjudged valid, and $712.72 adjudged invalid, and that $65,-795.34 of lien claims have been referred to a special master, and with the exception of some $10,000 face value of claims, which have since been settled, are awaiting adjudication.

The premiums on policy were paid by the receiver from the fund of the estate.

The respondent has set up two affirmative defenses, which are, in substance, as follows:

(1) That the policy upon which suit is brought was procured by misrepresentation and concealment of respondent's interest in the insurance; and

(2) That the respondent had no insurable interest in the subject-matter of the insurance.

The allegations of the respondent set up in its second affirmative defense read as follows:

"That said insurance was solely for the benefit of the persons, firms and corporations who had and/or asserted maritime liens against the said steamships; that if such insurance were issued by such underwriters, including the respondent herein, it would be solely for the benefit of said persons, firms and corporations. * * *

"That the said statement and representation was in substance and effect a representation that the said Caffey, in applying for said lien insurance and in procuring the same, was not acting in his capacity as receiver of the property and estate, generally, of the New York and Cuba Mail Steamship Company, but was acting solely as trustee for the persons, firms and corporations who owned and/or who had asserted liens against the said steamships, including the said steamship 'Esperanza.' "

And then follows an allegation that these representations were material and were relied upon, but were false in the following particulars: "In that the said Caffey did not then and there intend to effect the said insurance solely for the benefit of the said persons, firms and corporations which had and/or asserted liens against the said vessels, including the steamship 'Esperanza.' That the said Caffey * * * have disclaimed * * * the interest and right of the said persons, firms and corporations in and to the proceeds

of respondent's said policy of insurance and have claimed and asserted and the libelant now claims and asserts that the said policy was procured by the said Caffey not for the sole benefit of the persons, firms and corporations who had and/or asserted liens against the steamship 'Esperanza' and the other said steamships, but was taken out for the benefit of the receiver, as such, and for the benefit of the general estate of the New York and Cuba Mail Steamship Company."

It is not alleged that these representations were untrue, but merely that the receiver "intended" that the insurance should inure to his benefit as receiver. Upon the trial the receiver offered and there was received in evidence the petition and answer in an equity suit in which several of the owners of maritime liens sought to require the receiver to pay over to them the fund which the receiver had collected under policies similar to the one in suit; this fund being the insurance which the other underwriters had paid to the receiver which has been referred to above. In said petition it is alleged: "The receiver has refused and is still refusing to pay to the said lienors who have asserted liens against the 'Esperanza' the amount of their liens, although the said liens should be paid in full out of the said insurance moneys."

And the said answer contains the following clause: "Eleventh: Admit that the Receiver has declined to pay the claims of those asserting liens against the Esperanza without proof of the validity and actual extent of the liens against the Esperanza at time of loss, and claims to be entitled as Receiver to any surplus of said insurance in excess of such actual liens; but deny the other averments of paragraph Tenth of the petition."

The question in the case at bar is whether or not there was a misrepresentation in securing the policy or concealment of the real party in interest, which entitles the underwriters to return the premium and cancel the policies. It is important to bear in mind that in this present suit the respondent is here as an underwriter and not as a lien claimant, and that its rights as a lien claimant or the claims of any one else to a lien of this insurance are not now up for determination. If this insurance was solely for the benefit of lienors, of course, there was no misrepresentation nor concealment.

As yet there has been no distribution of the fund, and the fact that the receiver contends that, if any surplus remain after the liquidation of the various liens, the estate is entitled to the surplus, is immaterial. The facts stated in the policy and in the applica-

tion for the insurance are as true to-day as they were when the contract for the insurance was entered into. Further, the respondent itself now contends that the insurance is for the benefit of the lienors. Moreover, the question of misrepresentation or concealment seems to be disposed of by the Circuit Court in Colton v. New York & Cuba Mail Steamship Co., supra, wherein Judge Swan, speaking for the court, states: "The policies had to insure the lienors' interests, or they would have violated the hull policies, and the underwriters would have been defrauded when the hull insurance was collected; they are issued 'on liens,' and, of course, the receiver had no insurable interest in the liens as such. The broker's letter we regard as a request for insurance on the lienors' interests only. * * * Hence we have a situation where the Receiver, acting in effect as agent for the lien claimants, took out a form of policy which they could lawfully have taken on their interest, but they alone, and only if solely interested in the policies."

The suit at bar is a suit by the receiver as such "agent" to collect the insurance. When collected, the question of distribution will then arise. It may or not appear then that the receiver, as a third party, or creditors have an equitable interest in the fund. The libelant, as the "agent" for the lienors, is the insured and is the payee under the policy, and it seems to me that, the loss having occurred, he is entitled to recover in this suit the amount of the insurance which the respondent wrote. The court merely holds that the libelant in this suit is entitled to collect the insurance from the respondent for distribution among the lienors who are entitled to share in the fund collected. The court is not passing upon the merits of the several lienors or what right, if any, the receiver may, as a third party, have to participate in the fund, as those questions are not now before the court.

Accordingly, a decree may be entered in favor of the libelant for the sum of $21,100, with interest.